EQUITABLE TRUST CO. v. SMITH (CHYTRAUS et al., Interveners).

(Circuit Court of Appeals, Seventh Circuit. January 4, 1897.)

No. 289.

RES JUDICATA—DECREE DISMISSING CROSS BILL FOR WANT OF EQUITY.

The E. Co., a New York corporation, obtained a decree of foreclosure of a mortgage upon certain land in Illinois, under which the land was sold, the E. Co. receiving a master's certificate of sale, from which the mortgagor could redeem in 12, or his judgment creditors in 15, months. The E. Co., both through its Western manager and directly, instructed its solicitors in the foreclosure suit to sell the certificate to the first applicant who would pay for it its face and interest. Such solicitors, under an agreement with the E. Co., were to receive a much larger fee in the case if the certificate were bought or redeemed than if the company took the land. The solicitors found purchasers for the certificate at par, and delivered to such purchasers, C. & C., an assignment of the certificate, and received the amount thereof and remitted it to the E. Co. Immediately after the expiration of the time for redemption, S., the original mortgagor, filed a bill in a state court against the E. Co., C. & C., and the solicitors, alleging that the E. Co. had agreed to allow him to redeem the land after the expiration of the time allowed by law, that he was then ready and willing to redeem, and that C. & C. had received the certificate with notice of his right. In this suit the E. Co. filed a cross bill, making the solicitors and C. & C. defendants, alleging that the land, before the sale of the certificate, had largely increased in value, that the solicitors knew this, and concealed it, and did not try to obtain more for the certificate than its face, and praying that the transfer of the certificate to C. & C. might be declared void, the certificate returned to the E. Co., upon payment of the purchase price and interest, or that the solicitors be decreed to pay the E. Co. the difference between that price and the real value of the land. This cross bill was dismissed for want of equity, and a decree was entered in the suit in favor of S., adjudging that he had still a right to redeem, and allowing him further time in which to do so. S. never redeemed, and a decree was entered finally foreclosing all his rights. Afterwards, C. & C. filed an intervening petition in the original foreclosure suit in the United States circuit court, praying that the E. Co. be decreed to have no further rights in the certificate, and that the master might be directed to execute a deed to them. To this petition the E. Co. filed an answer, setting up substantially the same claims as in the cross bill in the state court. *Held,* that the decree upon the cross bill was conclusive upon the claims of the E. Co. to the certificate, and it was estopped to reassert them; and as the only decree which could have been made upon such cross bill, aside from a dismissal without prejudice, was a determination of the rights of the E. Co. as against C. & C. and the solicitors, it would be a contradiction of the record to attempt to show that the court took into consideration, in entering its decree, only the right of S. as against the E. Co. *Held,* further, upon the facts of the case, that no bad faith or breach of duty on the part of the solicitors in effecting the sale at the price paid was shown, which would deprive C. & C., knowing the facts, of the right to the aid of equity in enforcing their rights under the certificate.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

In the matter of the intervening petition of Axel Chytraus and O. M. Carson. On the appeal of the Equitable Trust Company.

On the 28th day of May, 1889, in a certain suit of foreclosure brought by the Equitable Trust Company, the appellant, against Edward G. Smith and others, a decree was entered finding the amount due to the complainant upon the mortgage to be $43,533.90, and the cost of suit, which included $1,850 for solicitors' fees. On June 24, 1889, the mortgaged premises were sold by the master, pursuant to the decree and were purchased by the Equitable Trust Company, which

received the usual master's certificate of sale. By the statutes of Illinois the mortgagor, Smith, could redeem from the sale within 12 months thereafter, and the judgment creditors of him could redeem within 15 months thereafter. Failing redemption by either, the Equitable Trust Company would be entitled to a deed on September 25, 1890. By the agreement between the Equitable Trust Company and its solicitors, made prior to the foreclosure suit, it was provided that in case of a foreclosure and purchase by the Equitable Trust Company and the issuance of a certificate of sale to it, and in case such certificate should not be redeemed or sold, but a deed should issue to the trust company, then the solicitors should receive and accept from the trust company the sum of $500 in full for their services; but in case the certificate should be redeemed or sold, so that the trust company should receive in money the amount of its debt instead of having to take the land, the solicitors should receive for their services the sum of $2,500. The Equitable Trust Company was a corporation having its principal office in the state of New York, but during this time had an agent, one George W. Kendal, located at Chicago, whose duty it was to keep the company advised of the condition of its business at Chicago, and the value of property in which it was interested. Prior to September 16, 1890, the mortgagor had negotiated with Kendal for the purchase or redemption of the certificate of sale, but he did not purchase or redeem during the time of redemption. On September 18, 1890, upon the suggestion of Kendal, the Equitable Trust Company forwarded the certificate of sale to their attorneys, with an assignment in blank without recourse, and with instructions to deliver it to the parties designated by Mr. Kendal upon receipt of the amount due. The Equitable Trust Company was also the holder of other certificates of sale under foreclosure upon property in the immediate vicinity of the property in question, which they had from time to time sold. Under date of September 8, 1890, the company inclosed to their solicitors three such certificates of sale upon property mortgaged by the defendant Smith, with instructions to sell them at par and interest, and requesting them to close the matter if possible, and obtain the money for the company. In this letter the company stated: "We would also like to sell the other certificate on block 1 (the certificate in question), and understand they (the parties owning the equity) will wish to buy it some time this week. As soon as they are ready please inform us, and we will execute an assignment and forward the certificate." On September 18, 1890, the solicitors wired the company, advising the sale of the three certificates sent on September 8th, and advising that parties were willing to buy the certificate on block 1, and requesting that it be mailed. On September 20, 1890, the solicitors wired the company, acknowledging the receipt of the foreclosure certificate, and stating: "Our last direction from Kendal was to sell to the first party who would pay cash. Shall we do so? Kendal is out of town, and we do not know his present address or time of return." To which, under date September 22, 1890, the company replied by wire as follows: "Sell certificate to first man who will pay for it in full." On the same day the solicitors acknowledged the receipt of the telegram, and advised the company that they had notified the applicant, "who expects to close to-day or to-morrow." On the 26th of September the company wired the solicitors to the effect that it had not yet received the money from the Smith certificates, and desiring to know "if there is any hitch about the trade going through." On the 29th of September the solicitors wired: "Some hitches, but expect to close and redeem by Wednesday." On October 2d the company wired its solicitors to either send that day cash, or return the certificate; to which, on the same day, an answer was sent to the effect that they had collected the money and would remit the balance on the morrow, it being too late to obtain a New York draft on that day, and that the defendant Smith had brought suit to set aside the sale of the certificate.

The solicitors, prior to September 22, 1890, had entered into negotiations with one Rozet, who represented a Mr. Drexel of Philadelphia, a large owner of property in the vicinity of the land in question, for a sale of the certificate. He advised them he could probably make a sale if the parties would pay the usual commission of 2½ per cent. This proposition, according to the allegations of the solicitors, was reported to Kendal, who declined it, stating that the trust company would pay no commission or expenses, that all it wanted was the amount due it for principal and interest, but that this must be net. This state-

ment was reported by the solicitors to Rozet, who then undertook to sell the certificate and have the purchaser pay the commission, and in that case agreed to share the commission with the solicitors. This arrangement, as is alleged by the solicitors and stated in certain of the pleadings in the cause, was reported to Kendal, who said the certificate was for sale "to the first person who would put up the money on it." Rozet concluded an arrangement with Carson and Chytraus for the sale of the certificate to them, and thereupon the solicitors of the Equitable Trust Company delivered the assignment of the certificate to Carson and Chytraus, and received also a check for $1,196.69, the amount of the commission, which they were to hold until it was determined whether the creditors of Smith would redeem the certificate within the time limited by law. If they should, no commissions were to be paid. Neither the defendant Smith nor any creditor of his redeemed the land within the period limited by law; but on the 27th of September, 1890, Smith filed his bill in a state court of Cook county against Chytraus and the Equitable Trust Company, Mason Bros., the solicitors, and some others, alleging that he had not made redemption within 12 months of the sale, but that before the expiration of 15 months, and prior to September 23, 1890, he entered into an agreement with the Equitable Trust Company, the holder of the certificate, by which he was allowed until September 24, 1890, to pay the amount due thereon in cash, and asserting that he had been, and was then, ready and willing to perform the agreement and to pay the money, and that Chytraus received the certificate and the assignment thereof with notice of the agreement. The trust company filed its answer to that bill, denying the agreement. It also, on the 4th day of February, 1891, filed a cross bill against its solicitors and Carson and Chytraus, alleging that the land in question in the summer of 1890 was of the value of $85,000; that such value was unknown to the company or its officers, and that it was supposed to be worth little, if any, over the amount for which the trust company had purchased at foreclosure sale; that it was known to its solicitors that the trust company and its officers held such low estimate of the value of the land, and were not in fact advised of its true value, and that they, the solicitors, knew, or in the exercise of ordinary care and good faith ought to have known, the real value of the land in question. The cross bill asserts the agreement heretofore stated with reference to the contingent compensation of the solicitors, the employment of Kendal by the company, and his duties as stated, and that it telegraphed its solicitors to sell the certificate to the first person who would pay cash therefor, in the belief that Kendal had instructed them so to sell the certificate, and in the belief that the land was worth but little above the face value of the certificate, and that the solicitors entered into negotiations with Rozet, and consummated the sale to Carson and Chytraus without endeavoring to secure a better price for the certificate than its face value; that the certificate was never indorsed by the trust company, or by any one in its behalf, but it assigned the certificate in blank without recourse; that it was not aware until after the commencement of the suit by Smith that Carson or Chytraus was in any way interested in the purchase. The bill offers to repay to Chytraus and Carson the sum paid out by them for the certificate, with interest and costs. The cross bill prays that the transfer of the certificate to Chytraus may be declared void, and the certificate returned to the trust company, as the lawful owner, upon repayment by it of the purchase price, with interest, and that it may be decreed to be the sole and lawful owner thereof, or that Mason Bros., the solicitors, may be ordered to pay the difference between the real value of the land and the amount they received for the certificate, and also the sum received by them as commission.

Answers to the cross-bill were filed by the solicitors, in which they deny that the value of the land at the time in question was $85,000, but allege that they supposed that the value of the land was somewhat in excess of the indebtedness, and that there was a fine margin of profit to one who would undertake to subdivide the land and make considerable expenditures for sidewalks, curbstones, water, gas, sewerage, and paving, in order to bring it into the market as building lots; that, to the knowledge of the trust company, the solicitors were endeavoring to sell the certificate at par, but, until the sale to Chytraus, had not been able to find purchasers; that their principal medium of communication with the trust company was almost invariably through Kendal, its Western manager, to whom they reported freely from time to time all the knowledge and informa-

tion they had with regard to the property and their efforts to sell. There was also an answer by Carson and Chytraus, in which they say "that it appears from the testimony of the secretary of the cross complainant, taken on the original bill herein, that he was aware 'that it was the Mason Brothers' legitimate interest to sell the certificate before redemption, for the reason that, under an agreement with cross complainant, said Mason Brothers were to receive a much larger fee for 'their services in the foreclosure suit in case the certificate was redeemed or sold.'"

On the 9th day of March, 1891, a decree was entered in the suit in the state court in favor of the complainant therein, Edward G. Smith, adjudging and decreeing that if he should within 60 days from that date pay the defendants Carson and Chytraus the amount of the certificate, with interest, the same should be delivered to him, and, if the said defendants should not accept the same, then the complainant should pay the necessary amount into the registry of the court for the use of such defendants; that upon such payment the said defendants might deliver such certificate to the complainant Smith, or, failing therein, the master in chancery should execute a conveyance to the complainant of all the interest of Carson and Chytraus and their assignees in the premises in question. The decree also dismisses the cross bill of the Equitable Trust Company for want of equity, and directs that the cost in the proceedings should be paid by the Equitable Trust Company. The decree further provides that if the complainant should not comply with the terms of this decree, or should not pay the amount within the 60 days as specified, then the bill of complaint should be dismissed. This decree was carried by the Equitable Trust Company to the supreme court of the state of Illinois for review, and was there affirmed on the 24th day of March, 1892 (141 Ill. 231, 30 N. E. 450), and a rehearing was denied on the 10th day of October, 1892.

On the 14th of December, 1892, an order was made in the state court for Cook county decreeing that, by reason of default in compliance with the terms of the decree, Smith had now no interest pertaining to the real estate and the master's certificate referred to in the bill. That decree was also appealed from, and upon the 24th day of October, 1894, upon some question of practice, reversed, and the cause was remanded. 38 N. E. 911. Upon the 28th day of January, 1895, the court extended the time for the performance by Smith of the terms of the decree until the 29th of March, 1895, and provided that, in case of failure to perform, the bill should stand dismissed without further order from and after the 29th of March, 1895. On the 22d day of May, 1895, a decree was entered in the state court that by reason of such default the complainant has now no interest or claim in and to the real estate or master's certificate mentioned in the bill, and forever restraining and enjoining Smith from making any claim with respect to such real estate. Upon the proceedings in the state court, and on the 20th of December, 1892, Carson and Chytraus filed a petition in the court below, setting forth the proceedings taken in the state court and praying that the trust company might be decreed to have no further title to the certificate; that the master be directed to issue to them his proper deed of conveyance. To which petition the Equitable Trust Company filed its answer on the 21st day of December, 1892, claiming, substantially as it claimed in its cross bill, that the sale by its solicitors to the petitioners was voidable and should be set aside and the certificate adjudged to it upon the payment of the amount, and asserting that the decree in the state court was not conclusive of its rights, but undertook solely to deal with the rights of Smith, as against Carson and Chytraus and the Equitable Trust Company, and that the question of the ownership of the certificate as between Carson and Chytraus on the one hand, and the Equitable Trust Company on the other, was not involved or passed upon by that decree. The answer further alleges that after December 14, 1892, and before the filing of the intervening petition by Carson and Chytraus in the court below, and on the 20th of December, 1892, the Equitable Trust Company formally tendered to Chytraus the sum of $60,000, in repayment of the amount paid by him to its solicitors in September, 1890, for the certificate, which was declined. On the 7th day of October, 1895, the intervening petition of Carson and Chytraus was heard upon the answer thereto, and upon documents stipulated to be correct abstracts of the material part of the record and proceedings in the case of Edward G. Smith against Axel Chytraus and others, in the state court, and the court thereupon found that

the trust company had sold, assigned, and transferred to Carson and Chytraus the certificate in question, that the premises had not been redeemed from the sale, that Smith and the trust company had no further right, title, or interest in the estate or in the premises, and that Carson and Chytraus were entitled to a deed of the premises; and it was decreed that the master should execute and deliver to Carson and Chytraus a master's deed of the premises. To review this finding the present appeal is taken.

William Ritchie, Edward B. Esher, and Francis J. Woolley, for appellant.

Axel Chytraus and Charles Deneen, for appellees.

Before JENKINS and SHOWALTER, Circuit Judges, and SEAMAN, District Judge.

JENKINS, Circuit Judge, after this statement of the facts, delivered the opinion of the court.

The principal question with which we have to deal relates to the effect to be given to the decree of the state court upon the cross bill filed by the Equitable Trust Company. It is insisted for the appellees that that decree is conclusive upon the claims now asserted by the Equitable Trust Company to the certificate of sale in question. On the other hand, it is contended that while issue was joined and evidence heard upon the allegations of the cross bill with respect to the relief therein prayed, and a decree was entered dismissing the cross bill upon the merits, still that occurred simultaneously with the decree in the original suit by Edward G. Smith against the Equitable Trust Company and others, and the court only considered the rights of Smith, and did not in fact determine the questions at issue respecting the rights of the Equitable Trust Company as against Chytraus and Carson. It is not to be doubted that a judgment rendered upon the merits is an absolute bar to a subsequent action, a finality to the demand in controversy, concluding the parties and those in privity with them. Such a judgment in another action between the same parties upon a different demand is said to operate as an estoppel with respect to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered. Cromwell v. County of Sac, 94 U. S. 351. The inquiry in such case must always be with respect to the questions actually litigated and determined, for only upon such matters is the judgment conclusive. Bissell v. Spring Valley Tp., 124 U. S. 225, 231, 8 Sup. Ct. 495; David Bradley Manuf'g Co. v. Eagle Manuf'g Co., 18 U. S. App. 349, 6 C. C. A. 661, 57 Fed. 980. And, where the record discloses uncertainty with respect to the particular point decided, that uncertainty may be removed by extrinsic evidence disclosing the particular point involved and determined. Russell v. Place, 94 U. S. 606, 608; De Sollar v. Hanscome, 158 U. S. 216, 221, 15 Sup. Ct. 816.

The cross-bill in question asserted the same facts here relied upon to show a want of authority on the part of Mason Bros. to dispose of the certificate of sale, and contains like allegations of failure of duty upon their part to disclose to their client the value of the land to which the certificate related. Edward G. Smith, the complainant in the original suit, was made a party to this cross bill solely on the

ground that he claimed some interest in the certificate, which interest was disclosed in his original bill. The prayer of the cross bill was to declare null and void the transfer of the certificate by Mason Bros. to Chytraus, and for its return and reconveyance to the Equitable Trust Company, as the lawful owner, upon repayment by it of the purchase price, or in the alternative that the solicitors might be required to pay to the Equitable Trust Company the difference between the real value of the land and the amount received for the certificate. It will thus be seen that, with respect to the facts asserted and the relief demanded in the cross bill, there was no sort of uncertainty with respect to the issue presented. The answers of the parties interested took direct issue upon the allegations of the cross bill, and the evidence produced went to sustain or disprove the charges asserted. The only decree that could properly be passed in that cross suit, aside from a judgment of dismissal without prejudice, was one which should determine the issues which had been presented, and adjudicate the right of the Equitable Trust Company to that certificate in the hands of Chytraus, or its rights against Mason Bros. for the alleged failure of duty by them. The record discloses that this bill was dismissed for want of equity. There is no uncertainty in the record, either with respect to the issues presented or the decree rendered. The decree necessarily involved and clearly determined the rights of the Equitable Trust Company against Mason Bros. and Chytraus. There is no room, as it seems to us, for controversy. It is only when the record itself does not show that the matter was necessarily and directly involved and determined that evidence aliunde may be received to prove the fact. But in such case the evidence must be consistent with the record, and not in antagonism to it. It may be that where a number of issues are involved, and the judgment may have proceeded upon one and not upon the others, it is open to proof dehors the record which of the questions was in fact determined. But here there was no double issue. The sole question involved went to the right of the Equitable Trust Company to this certificate of sale, and the decree could not have passed without determining that matter. The assertion, therefore, of the Equitable Trust Company that the issues considered and passed upon concern and refer exclusively to the rights of Edward G. Smith, and that the court did not determine or pass upon the rights or interests of the trust company as against Chytraus and Mason Bros., is in direct contravention of the decree itself, and is in impeachment of the intelligence of the court which rendered it. Nor does it affect the question that in the original bill Smith obtained a decree which found an agreement upon the part of the Equitable Trust Company to sell the certificate to him, and which determined his right, within the time limited, to redeem or pay the purchase price of the certificate. If he should fail to redeem, as in fact resulted, the rights of the parties before us would still be at large with respect to the ownership of the certificate of sale, unless they were determined upon the cross bill filed. It will not do to say, in the light of a decree dismissing the cross bill upon the merits, that it did not enter the mind of the court that Smith would fail to redeem. There is no uncertainty upon

the face of the record concerning the action of the court. Nothing seems to have been left at large or omitted upon the possibility of future contingency. The rights of all parties were determined. Indeed, there is an express finding in the decree in the original suit that the Equitable Trust Company authorized the sale and delivery of the certificate by Mason Bros. to Chytraus and Carson. The Equitable Trust Company understood the decree to be conclusive of its rights. The record discloses that it assigned error upon the decree to the effect that the court erred—First, in dismissing its cross-bill; and, second, in not decreeing "that said certificate belonged to said Equitable Trust Company, and did not order Chytraus to surrender the same to said company, upon the payment of the sum paid therefor by Chytraus, with interest." There was no misconception at the time, on its part, of the effect of the decree. We are constrained to hold that the decree in the cross suit is conclusive between the parties to the record. We should do violence to one of the most wholesome provisions of law touching the sanctity of judicial decrees if, in a case where the record discloses no uncertainty of the issues presented or in the decree passed, we should hold that it was allowable, by way of collateral attack, to show that the court did not mean to do what it in fact did, and that the decree was not intended to determine what it in fact does determine.

It is, however, said by the appellant that the decree in the cross bill should not be controlling, because the issue there was whether the Equitable Trust Company, in a court of equity, was entitled to annul the contract of sale by Mason Bros. to Chytraus; while here the question is whether Chytraus, invoking the aid of equity to obtain the master's deed upon the certificate of sale, is entitled to the relief demanded. In other words, it is said that a denial of the relief here sought would not be inconsistent with the decree in the cross suit, because that decree may have passed upon the ground of want of equity as respects the Equitable Trust Company; while the relief here demanded should be denied, because the purchaser of the certificate does not come with clean hands; and familiar authorities are urged to our attention, holding that an agreement may not be entitled to be enforced, and yet not be so objectionable as to call for the exercise of equitable jurisdiction to rescind. We will therefore consider whether there is here any such unfairness or wrong to the Equitable Trust Company that would warrant a court of equity to withhold its hand, and to refuse the present owners of the certificate of sale the usual master's deed upon foreclosure.

The Equitable Trust Company had several foreclosure suits of mortgages upon different parcels of land in the vicinity of the land in question. Mason Bros. were solicitors for the company in those suits. It was agreed between the company and its solicitors, at the outset, that in case the certificates of sale of the land should not be redeemed or sold, but a deed thereon should issue to the company, the solicitors should receive in full for their services the sum of $500; but that, if the certificates should be redeemed or sold so that the company would get the money thereon instead of the land, then their solicitors might charge and collect the sum of $2,500. It

appears that at the time this arrangement was made the solicitors were informed by Mr. Kendal, the Western manager of the company, that the certificates would be for sale to the first person that would pay their face value and interest, and he suggested to the solicitors that they should purchase the certificates. A similar arrangement seems to have been made with the master in chancery with respect to his fees and commissions. The sale took place on the 24th of June, 1889, and the owner, Edward G. Smith, had 12 months thereafter in which to redeem, and his judgment creditors had 3 months thereafter in which to redeem. It is manifest that the Equitable Trust Company did not wish to acquire this land, but were anxious that the certificates should be redeemed or sold; that it was foreign to its business to become the owner of or to speculate in real estate, and that it was not desirable for it so to do. It is also true that Mason Bros. had such a contingent interest in the matter that they had the right to demand that the trust company should permit a sale of the certificates if a purchaser could be procured in order that they might receive their contingent fee. It was thus to the interest of and within the design of both parties that the certificates of sale should be disposed of. The mortgagor did not redeem within the year, and his rights were forfeited. It is, however, conclusively established by the decree of the state court that, after such failure to redeem, the Equitable Trust Company entered into an agreement with him to sell to him the certificate upon payment of the amount on or before the expiration of the 15 months allowed to creditors to redeem, and this was without the knowledge of Mason Bros. The trust company, it is true, denied that any such agreement had been made with Smith, but it is manifest that the company was willing and anxious to receive from Smith or any other person the face value of the certificate, with interest, and were desirous that it should be sold.

It is not necessary for us to enter into the details of the allegations and admissions of this record; but it is clear to our minds that there existed the desire on the part of the company to sell, and that it was for the manifest interest of Mason Bros. that the certificate should be sold, and that they had right to demand it should be sold. Neither can we doubt that the trust company authorized a sale by Mason Bros. The controversy upon this point is, to our thinking, unsubstantial. Any hesitancy disclosed upon the part of the company would seem to have been grounded upon a disposition upon its part to allow the owner of the land full opportunity to redeem, in preference to the certificate passing to the possession of a stranger, and not to any desire to obtain the ownership of the lands.

It is said that during the summer of 1890 this land had risen largely in value, without the knowledge of the company, but to the knowledge of Mason Bros.; and that the latter concealed such knowledge from the company, when it was their duty to disclose it. The fact of such ignorance may well be doubted, since the Western manager of the company, Mr. Kendal, was fully possessed of all information touching the land which Mason Bros. had, and his knowledge must be held to be the knowledge of the company. He and not

Mason Bros. was the one who had charge of the affairs of the company at the West. Primarily it was his duty, not that of Mason Bros., to advise the company touching its interest in the lands. It is further to be observed that the certificate of sale was still subject to redemption, and the company had no absolute right to the lands. The greater the value of the land, the more likely was the certificate of sale to be redeemed. The matter thus remained until within a brief period of the expiration of the time of redemption. Mason Bros., having an interest in the certificate of sale and a right to demand its sale upon producing a purchaser for it at its face value and interest, must needs assist the company to obtain a purchaser, or their interest might be wholly lost. They procured a purchaser through a broker, the purchaser agreeing to pay to the broker his commission of 2½ per cent., in the contingency that the certificate should not be redeemed. The amount of the certificate and interest, and the commission, was paid by Carson and Chytraus to Mason Bros., the amount of the commission to be delivered to the broker only in case of failure of redemption. The amount paid for the certificate was remitted to the Equitable Trust Company, who has since retained, and did not make tender back of the amount until December 20, 1892, although it is to be said that the company filed its cross bill to rescind the sale in February, 1891. It, however, retained this large amount of money until the decree in the state court of December 14, 1892. By that decree Smith, by reason of default in compliance with the terms of the former decree, was adjudged to have forfeited all interest in the real estate or in the certificate of sale. The trust company had permitted Carson and Chytraus to take upon themselves the burden of the litigation, to defend their right against Smith both in the lower and in the supreme court of the state; and only when Smith's right seemed extinguished was there a tender of the amount received. If such tender was necessary to discharge the company of an imputation of laches, we think it was too long delayed. It is not necessary to dwell upon this point, however, for we are satisfied that the sale by Mason Bros. was authorized by the company, and that they were guilty of no wrong or unprofessional conduct in so doing. It cannot be said that in selling the certificate as they did, for the face value and interest, they were guilty of bad faith towards their client in not seeking to obtain a larger sum. The time of redemption had not expired, and no sane man would have given a bonus for a certificate affected by the contingency of redemption. It is true that Mason Bros. received from the broker a portion of the commissions paid him by the purchaser. Whether the retention of the same by Mason Bros. may be considered to be in violation of their duty to their client we need not determine. If it was, the trust company has ample remedy in a direct proceeding against them. The fact cannot affect the validity of the sale to Carson and Chytraus. In what we have thus said we have not designed by one jot or tittle to abate the strict rule which the law imposes upon transactions between counsel and client. We should be the last to sanction the slightest act of bad faith towards the client upon the part

of the solicitor, but we have not been able to see in this record, with the possible exception of the reception and retention of a portion of the broker's commission, a single act which can be attributed to them as a wrong. We do not mean to say that the reception and retention of a portion of the broker's commission was a wrong. We do not deem it our present duty to pass judgment upon that.

It may be further observed, with respect to the alleged increase in the value of this land in the summer of 1890, that it was unimproved property in the outskirts of the city of Chicago, and that its value was largely speculative. Whether any great profit could be realized from it depended upon the growth of the city in that direction, and required the expenditure of large sums of money in the laying out of streets and the construction of such improvements as are common with respect to urban property. These facts were known to Mr. Kendal in the summer of 1890, and before the expiration of the period of redemption. We cannot believe that the trust company, with the like knowledge,—for Kendal's knowledge was its, —desired to embark in an adventure which required the expenditure of large sums of money, and the success of which was contingent and doubtful. Such a transaction would be wholly foreign to the business in which it was engaged. Upon the whole, we perceive no reason for the application of the doctrine invoked, that relief here should be denied upon the ground that it would be inequitable to grant it. The decree will be affirmed.