### BARBER v. COLUMBIA CHEMICAL CO.

(Circuit Court of Appeals, Sixth Circuit. January 10, 1916.)

No. 2654.

1. APPEAL AND ERROR ☞1022—REVIEW—QUESTIONS OF FACT.
    The findings of a master in chancery, concurred in by the District Court, are to be taken as presumptively correct, and should not be disturbed on appeal, unless clearly wrong.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4015–4018; Dec. Dig. ☞1022.]

2. ESTOPPEL ☞93—PERMITTING IMPROVEMENTS—DAMS.
    Plaintiff and others organized a syndicate, which became the owner of the whole tract of land on which a city was laid out, as well as surrounding land, and which engaged in promoting such city and in procuring various manufacturing plants to locate there. Defendant, a chemical company, was solicited to locate its plant there, and made a series of experiments during a considerable period of time to determine whether a stream could be depended upon to supply the water necessary for its needs. Plaintiff owned 40 per cent. of the stock of the syndicate, and knew that defendant would require large quantities of water, that members of the syndicate had represented to defendant, as an inducement for it to locate there, that water in abundance could be provided from such stream, and that a dam would be necessary to provide water during the dry season. Defendant did locate its plant there, purchased land for that purpose from the syndicate and others, and erected buildings and made improvements at a cost of several million dollars. Plaintiff attempted to sell defendant certain land at about 1000 per cent. advance over its cost six years previous, and, being unable to do so, sued to compel the removal of the dam, on the ground that it backed up water and prevented the proper drainage of such land. No material damage to plaintiff's land

was shown. *Held*, that plaintiff's conduct and course of dealing with defendant was such that he was not entitled to injunctive relief.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 264–275; Dec. Dig. ☞93.]

3. WATERS AND WATER COURSES ☞177—INJURY FROM DAM—ENJOINING OBSTRUCTIONS.

A mandatory injunction against the maintenance of a dam could not be granted on the ground that it backed up the water of a stream to such an extent as to prevent the drainage of land by proper underground tiling, where no effort had been made to so drain the land, and it was at most a probability that the dam would prevent such drainage.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 260–262; Dec. Dig. ☞177.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; William L. Day, Judge.

Suit by Ohio C. Barber against the Columbia Chemical Company. From a decree in favor of defendant, plaintiff appeals. Affirmed.

C. E. Smoyer and J. A. Kohler, both of Akron, Ohio, for appellant.

A. E. Clevenger, of Cleveland, Ohio, and F. H. Waters, of Akron, Ohio (Kline, Clevenger, Buss & Holliday, of Cleveland, Ohio, and Allen, Waters, Young & Andress, of Akron, Ohio, of counsel), for appellee.

Before WARRINGTON and KNAPPEN, Circuit Judges, and McCALL, District Judge.

McCALL, District Judge. This is a case in equity. The court below denied the relief sought and dismissed the bill. The plaintiff appealed and assigned error.

Wolf creek (sometimes called a county ditch) flows through the lands of plaintiff and defendant near Barberton, Ohio. The lands of the former lie adjacent to and above that of the latter. It is insisted that a dam, which is maintained across the creek by the defendant at its plant, impedes the flow of water so that it backs up and prevents the proper drainage of plaintiff's lands, to his damage. The suit was brought to require the defendant to remove the dam, to enjoin it from diverting the ditch or water course from the proper line, and restore it to its original and true line, and to its proper and original condition prior to the construction of the dam, so as to allow the water to flow in its proper channel in such a manner as to carry away the sediment, and permit the free drainage of the lands, which drain into the ditch and water course, and, further, that the court ascertain and determine the damage which the plaintiff had sustained, occasioned by the construction of the dam and the consequent injury to his property, and for general relief.

At the time the injunctive relief was denied, the court was of the opinion that the plaintiff had a right to equitable relief, by way of compensation, for such definite damage and injury as he had sustained up to that time, and retained the case as a pending suit. The case was referred to a special master, to "take testimony and report what damage the plaintiff had sustained to his lands, because of the defendant's

said dam." The master was instructed to consider the testimony then on file, as well as such other evidence as either party desired to offer on the question of damages. The master viewed the premises, by agreement of counsel for both parties, accompanied by the plaintiff and his counsel, and, after having carefully considered the evidence, reported:

"I find that complainant has sustained no definite, material, or substantial damage or injury to his lands, described in the bill of complaint, because of the defendant's said dam."

Exceptions were filed to the report of the master, which were disallowed, and the court concurred in the master's findings.

[1] The findings of the master in chancery, concurred in by the court, are to be taken as presumptively correct, and should not be disturbed, unless clearly wrong. Furrer v. Ferris, 145 U. S. 132, 12 Sup. Ct. 821, 36 L. Ed. 649; Lovewell v. Schoolfield, 217 Fed. 689, 702, 133 C. C. A. 449. In Western Transit Co. v. Davidson, 212 Fed. 701, 129 C. C. A. 232, Judge Denison, speaking for this court, said:

"We think, in the ordinary case of a reference by the equity court to its master 'to take proofs and report his findings of fact and law,' * * * it has never been intended to hold that the finding or report should have any greater force than is implied by the criterion, 'clearly against the weight of the evidence,' or 'unless error clearly appears,' or our own formula, 'a decided preponderance against the judgment.'"

Whether the plaintiff's land had suffered any material damage from the maintenance of the dam by the defendant is essentially a question of fact, and since we discover no serious nor important mistake in the consideration of the evidence, nor find that the evidence decidedly preponderates against the decree, under the ruling of this court in the above-cited cases, we approve, in this respect, the action of the trial court.

[2] The mandatory injunction was denied, as stated in the decree, "because of the conduct and course of dealing of the complainant, and his delay in bringing this suit." There are two grounds, therefore, as a basis of the decree: First, plaintiff's conduct and course of dealing with the defendant; and, second, his delay in bringing the suit.

Subsequent to 1890, the plaintiff, O. C. Barber, and his colleagues organized a syndicate, known as the Barberton Land & Improvement Company, which became the owner of the whole tract of land on which the city of Barberton, Ohio, was laid out, as well as large tracts of land immediately surrounding the town site. Barber acquired 40 per cent. of the stock. The business of the syndicate was principally the promotion of the city of Barberton, and its entire energies were devoted to procuring various manufacturing plants to locate there, to selling lots and land owned by it, and also to selling large tracts of land surrounding the city.

The defendant was solicited by members of the syndicate to locate its plant at Barberton. Yielding to the solicitations, the defendant sent its engineer to examine and report upon the suitability of the site proposed by the plaintiff, especially as to whether water in necessary quantities was at all times obtainable. The defendant was assured by

members of the syndicate that an ample supply of water for its needs could be obtained from Wolf creek and vicinity. A series of experiments on the stream was conducted by the plaintiff and a member or members of the syndicate for a considerable period of time, in order to determine whether the stream during the dry portions of the year could be depended upon to supply the requisite amount of water. It was thus ascertained that by putting a suitable dam across the stream, at the proposed site of defendant's works, a sufficient quantity of water for its manufacturing needs could be obtained.

Was the plaintiff acquainted with these representations and activities by the syndicate? It appears from the record that William A. Johnson was the engineer in the employ of the Barberton Land & Improvement Company, and that he was directed to make some readings of the temperature of Wolf creek and the volume of the flow of water, to ascertain whether there was sufficient water and of proper character for the purposes of the defendant Chemical Company's uses, and he says that:

"Mr. Galt [manager of the defendant company] stated to me, right at the beginning, that water was one of the most important things to be considered in the establishment of that business, and that is why these experiments were conducted over such a long period of time. I discussed the matter with Mr. Barber and my partners, just as I did everything else, and I did not do anything until they were fully informed of everything."

From this and other evidence of like character, we are unable to escape the conclusion that the plaintiff was acquainted with these representations and activities of the syndicate in its effort to induce the defendant to locate its plant at Barberton.

Induced by the representations and the experiments as to water, defendant decided to locate its manufacturing plant at Barberton, and for that purpose purchased in 1899 from the Barberton Land & Improvement Company and others the lands now owned by the company and occupied by it, and erected on the premises many large and expensive buildings, filled them with large quantities of costly machinery, bored numerous wells to a salt formation 2,700 feet beneath the surface of the earth, and made other improvements necessary for its business, amounting now to more than $4,000,000.

For the purpose of conducting a portion of the water into its manufacturing plant, located along the banks of the stream, the defendant widened the stream on its premises, on both sides thereof, from its natural width of about 20 feet to 60 feet, and also deepened the channel, throughout its entire works at a heavy cost. Until about 1904, the defendant maintained in the stream a solid dam, for the purpose of conserving the water for its use. At that time it replaced the solid dam with a lift dam, or series of gates, so constructed that when water was plenty the dam could be entirely removed from the stream, by lifting the various gates and thus allowing the water to flow through the channel unimpeded, with a much greater area for such purposes than formerly existed. In dry times, when water was scarce, all the gates or any of them could be lowered and the water conserved for the use of the defendant, except a small portion, was returned to the stream below the dam.

Thus it appears from the record that the plaintiff knew that the defendant would require large quantities of water; that members of the syndicate represented to the defendant, as an inducement for it to locate at Barberton, that water in abundance from Wolf creek and vicinity could be provided for at the site of the plant, and that it would be necessary in some measure to dam the creek so as to provide a reservoir, to draw upon during the dry season. When we consider the correspondence in the record, that passed between the plaintiff and the defendant in September, 1905, together with circumstances preceding and subsequent thereto, and recall that the court below found that plaintiff had sustained no damage to his land because of defendant's dam, it is difficult to escape the conclusion that the plaintiff's inability to sell to defendant the land under consideration, at about 1,000 per cent. advance over its cost six years previous, was probably the predominant motive that induced plaintiff to bring this suit, rather than because of any real damage he had sustained to his land.

In view of the entire record, we are impressed with the idea that the court below was correct in decreeing that the conduct and course of dealing of the plaintiff with the defendant disentitles the plaintiff to injunctive relief. Mr. Justice Brewer, speaking for the Supreme Court of the United States, said:

"It is a familiar law that injunction will not issue to enforce a right that is doubtful, or to restrain an act the injurious consequences of which are merely trifling." Canal Co. v. Canal Co., 177 U. S. 302, 20 Sup. Ct. 630, 44 L. Ed. 777.

Plaintiff's right to injunctive relief should be made clear, for, if granted, it would very seriously affect, if it did not destroy, defendant's manufacturing business at Barberton. A suit for an injunction is an equitable proceeding, and the interests of the defendant are to be considered, as well as those of the plaintiff. Wilson v. Shaw, 204 U. S. 31, 27 Sup. Ct. 233, 51 L. Ed. 351.

[3] It was insisted at the hearing that, though it may not have been shown that the dam impeded the flow of water so as to back it up and inundate plaintiff's land, the evidence did show that the water backed up to such an extent that it prevented the drainage of the land by proper underground tiling. That conclusion is not at all certain— a probability, at most. No effort has been made to use underground tiling for draining the land, and until this has been done, and the result more clearly ascertained, we think the dam should not be disturbed on that account.

The doctrine of estoppel, the character of the water course, and other questions are raised upon the record; but we deem it unnecessary to discuss them, since, as we think, they are not material to a proper determination of the case.

It results that the decree must be affirmed, with costs, but without prejudice to plaintiff's right to recover of defendant, by proceeding supplemental to this decree, such damages, if any, as plaintiff may hereafter suffer by reason of any change made by defendant, subsequent to the decree appealed from, affecting the flow in the ditch to the injury of plaintiff's land, or in case defendant's present or future

interference with the flow of the ditch shall actually operate to prevent the drainage of plaintiff's land (as held under his presently existing title or easement) into the ditch by means of undertiling, if and when such drainage shall be actually attempted.