## DE SOLLAR *v.* HANSCOME.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF COLORADO.

No. 303. Argued and submitted April 23, 1895. — Decided May 20, 1895.

It is of the essence of estoppel by judgment that it is certain that the precise fact was determined by the former judgment.

Where the existence of a contract is a matter of doubt, equity will not, as a rule, decree specific performance, especially when it appears that the property to which it relates was rapidly rising in value.

ON June 6, 1889, the appellant, as plaintiff, filed a bill in the Circuit Court of the United States for the District of Colorado for the specific performance of a contract for the sale of real estate. The defendant appeared and answered, and also filed a cross-bill, the purpose of which was to secure a decree cancelling an agreement for the sale of the real estate in controversy, made by an agent of the defendant, and placed on record by the plaintiff. Pleadings having been perfected, proofs were taken, and, upon a final hearing, on July 12, 1890, a decree was entered dismissing plaintiff's bill, and decreeing on behalf of the defendant a cancellation of the recorded agreement.

Among the undisputed facts are the following: In the fore part of the year 1888 the defendant lived in Wichita, Kansas, and was the owner of the lots in controversy. Some correspondence passed between him and J. J. Henry, of Denver, in reference to a sale, and on February 29 he wrote this letter:

"WICHITA, KANS., *Feb.* 29, 1888.

"John J. Henry, Esq., Denver, Col.

"DEAR SIR: Yours of the 25th is rec'd; am sorry you have to work so hard to sell my lots on Clarkson St., for I am not so very anxious to close them out even at the $5000, the price I held them at some time since. If I make any change on them it will be to advance the price, as I had just about as

soon hold them as to sell for $5000, and I think the time is up that I offered to sell them for that sum.    Friends have advised me not to sell them now, as property was advancing in that section.    In no case should I sell them for less than $5000, and I should insist on having at least ½ cash and the balance in one and two years at the longest, interest at 8 per ct. and payable semi-annually, and I should prefer to make the time shorter.    As I now expect to be in Denver on or before March 10th, perhaps we can then arrange about a sale, if not disposed of before, but, as I have before written, I am not at all anxious to sell at my first offer of $5000 and half cash.

" Yours truly,         W. B. HANSCOME."

On the receipt of this Henry and plaintiff signed the following agreement :

" DENVER, COLORADO, *March* 3, 1888.

"Know all men by these presents that I, John J. Henry, acting as agent for Wm. B. Hanscome, of Wichita, Kansas, have agreed to sell to H. S. De Sollar, of the city of Denver and State of Colorado, the three lots owned by the said Wm. B. Hanscome situated on Clarkson Str. between 16th and 15th avenues; 15th avenue is known as Colfax avenue; — block, numbers of lots not known, but they are believed to begin the 4th lot from the corner of 15th street and are on the west side of Clarkson Str., fronting east.    The lots are each 25 ft. on Clarkson St., running back to an alley, and are 145 ft. in depth.    Said De Sollar is to pay five thousand dollars, $5000, for the lots above described, payments as follows, to wit: Two hundred dollars, $200, in cash this day, the receipt whereof is hereby acknowledged, and twenty-three hundred dollars, $2300, on or before the evening of the 24th day of the present month of March ; the remaining sum of the purchase money, $2500, one-half, or $1250, is to be due and payable on or before one year from the date of deed, and the other half, $1250 in two years, on or before, from date of deed, each sum bearing interest at the rate of eight, 8, per cent per annum, interest payable semi-annually ; payment on these

deferred amounts to be secured by notes and deed of trust on the property now bargained for.

"It is understood that a good, sufficient, and satisfactory deed is to be made by the said Wm. B. Hanscome for the said described property on or before the 24th day of the present month of March, at which time the papers are all to be dated and executed. It is also further understood that the property conveyed is to be clean and clear of all incumbrance.

"And it is further understood that if the said H. S. De Sollar is or should be in default in meeting the second payment herein provided for, then the $200 paid this day shall be forfeited.

"JNO. J. HENRY.

"H. S. DE SOLLAR."

A few days thereafter defendant reached Denver and at first, at least, repudiated the action of his agent. Subsequently the plaintiff placed the letter and agreement on record, whereupon this defendant, as plaintiff, commenced an action at law to recover damages. In the complaint he alleged ownership of the lots, that the letter and agreement had been placed upon the record for the purpose of clouding his record title, that they did have the effect to cloud such title, and interfered with his full enjoyment of the premises and the ready sale of the lots, and prayed damages in the sum of $5000. To this complaint an answer was filed, which, in addition to certain denials, set forth that after Hanscome's arrival in Denver he had fully approved, ratified, and confirmed the agreement made by Henry, his agent, and that defendant had placed the papers on record in good faith and to protect his own rights. The case was tried before the court and a jury, and resulted in a verdict and judgment for the defendant therein, the plaintiff and appellant here.

In addition to these undisputed facts there is a conflict in the testimony as to what took place at or about the time the letter and agreement were placed on record. The defendant insists that, though he at first refused to ratify the action of his agent, he afterwards went to the plaintiff, and offered to

carry out the contract, but the latter declined to proceed any further with the matter; that subsequently the parties changed front; the plaintiff insisted on carrying out the contract while he declined to make a deed. It seems that on examination there was found on record a receipt, signed by a man named Dubbs, of $25, and purporting to be a receipt by him, as agent of the defendant, of so much money on account of a sale of the property, and that there was a dispute between the parties. as to whose duty it was to have this apparent cloud removed.

*Mr. Chapin Brown* for appellant. *Mr. Arthur H. O' Connor* was with him on the brief.

*Mr. W. C. Kingsley* for appellee submitted on his brief.

Mr. Justice Brewer, after stating the case, delivered the opinion of the court.

It is unnecessary to review the testimony as to the personal negotiations between the parties after the defendant's arrival in Denver, or to attempt to decide which of them most accurately recollects the transactions. It is enough to say that there is a serious contradiction between them, and perhaps it would be difficult to determine the real facts. The plaintiff insists, and that is the burden of his contention, that the judgment in the law action is conclusive as to the fact of defendant's assent to the contract as executed by his agent, while the defendant claims that it settles only that this plaintiff, acting under the advice of counsel in placing the papers on record, was guilty of no wilful or malicious wrong, and, therefore, not liable in damages. The same learned judge who presided at the trial of the law action decided this case, and we have before us his charge to the jury in that to compare with his opinion in this case.

It is true that in his charge the judge said to the jury, "the chief question for your consideration, therefore, is whether the plaintiff, by his conduct and by what he did when he came to know what had been done in his name, ratified and confirmed this agreement;" but he also charged that there

was no question of punitive damages in the case, because, for reasons stated, the defendant acted in good faith, and, in respect to actual damages, said : " There is no direct showing of damage, because the property, according to the testimony, was, at the time the suit was brought, worth more than the defendant was to pay for it, so that in respect to the value of the property the plaintiff lost nothing by the delay, and it is only a question of what would be allowed by the jury for doing a thing of that kind, filing a paper which gave to the defendant no right and which he was not entitled to insist upon, and which operated as a cloud upon the title of the plaintiff." And again : " The question is mainly whether you will accept the plaintiff's account or the defendant's in respect to the negotiations which took place between them from the 12th to the 23d of March, 1888. If you decide that the plaintiff's account is correct, you can return such damages as he may be entitled to. If you agree with the defendant, your finding ought to be for him."

Obviously, the jury, under these instructions, were at liberty to find for the defendant, if they thought that in fact the plaintiff had suffered no damages by the filing for record of the letter and agreement. When the judge, speaking of ratification, uses such expressions as " the chief question " and " the question is mainly," he indicates the existence of another though subordinate question. And when he charges that punitive damages cannot be recovered, that there is no direct evidence of any damage and that the jury may award to plaintiff, if they find a ratification, " such damages as he may be entitled to," he plainly authorizes a verdict against the plaintiff for want of " damage." It may be said that if a wrong was done the plaintiff was, technically, entitled to, at least, nominal damages, but no instruction to that effect was given. The charge was, ratification or no ratification, damage or no damage. That the learned judge was of opinion that the verdict of the jury was only a finding that the plaintiff had suffered no damages, is probable from his opinion in this case, for he says, in reference to his instructions :

" In other words, in a suit, for clouding the title, it must

appear that, the act of the defendant was wilful, and to a considerable extent malicious, done with intent to injure the owner of the property; and when there were negotiations continued through many days in respect to the purchase of the property, and which resulted in an agreement which was full and complete in all its details, except that there were some matters of difference between the parties touching the title, it could not be said that the purchaser would be subject to an action for putting the papers on record.

"There can be no reason to doubt the correctness of the position assumed in the trial of that action, and that it was well decided by the jury."

Now it is of the essence of estoppel by judgment that it is certain that the precise fact was determined by the former judgment.

"It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record, as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered, the whole subject-matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined." *Russell* v. *Place*, 94 U. S. 606, 608.

There is in this case no extrinsic testimony tending to show upon what the verdict of the jury was based. We have simply the record of the former judgment, including therein the testimony and the charge of the court from which to determine that fact, and in the light of the charge it is obviously a matter of doubt whether the jury found that the agreement made by the agent was ratified by the principal,

or that no damage had in fact been sustained by placing the papers upon record. We are not now concerned with the inquiry whether the instructions of the court were correct or not. We look to them simply to see what questions were submitted to the jury, and if they left it open to the jury to find for the defendant upon either of the two propositions, and the verdict does not specify upon which the jury acted, there can be no certainty that they found upon one rather than the other. The principal contention, therefore, of the plaintiff fails.

This practically disposes of the case, for the testimony leaves it doubtful whether there was any contract between the parties. Obviously the agreement signed by Henry as agent was not within the scope of the authority given. Authority to sell for $5000, one-half cash, is not satisfied by an agreement to sell for $5000, $200 cash, $2300 in three weeks, and the balance on time. Further, the agreement was not in fact for $5000, but only $4950, the agent calling it $5000, and claiming only $100 as his commission instead of $150. Whether the defendant afterwards ratified his agent's action is a matter in respect to which the testimony is, as we have stated, conflicting. And where the existence of a contract is a matter of doubt equity will not, as a rule, decree specific performance, especially in a case like this where, as appears, the property was rapidly rising in value.

We see no error in the conclusions of the Circuit Court, and its decree is, therefore,

*Affirmed.*