CHARLES W. NORTON *vs.* WILLIAM A. NEVILLS & another.

Suffolk.    March 28, 29, 1899. — September 7, 1899.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP,
& HAMMOND, JJ.

*Special Agency — Agent acting within Scope of his Authority.*

A written agreement made by A. with B., setting forth that A. is acting under and by virtue of the authority conferred upon him by an agreement between himself and C., gives B. full notice that A. is acting as a special agent of C.

An agent acting under a power which allows him to sell for cash has no authority to sell on credit.

CONTRACT for an alleged breach of an agreement to deliver to the plaintiff one hundred thousand shares of stock of the Rawhide Gold Mining Company alleged to have been sold to

the plaintiff by the defendants acting through their agent, one George M. Pinney. Trial in the Superior Court, before *Blodgett*, J., who ruled, upon the facts as stated and agreed by counsel, that the action could not be maintained, and directed a verdict for the defendants; and the plaintiff alleged exceptions. The facts appear in the opinion.

*W. Schofield & R. G. McClung*, for the plaintiff.

*E. S. Pillsbury*, (of California,) (*C. M. Reed* with him,) for the defendants.

LATHROP, J. The written agreement which Pinney made with the plaintiff, on March 23, 1896, set forth that Pinney was acting under and by virtue of the authority conferred upon him by an agreement between himself and the defendants dated September 23, 1895, as amended by a supplementary agreement between the same parties, dated September 30, 1895. The plaintiff therefore had full notice that Pinney was acting as a special agent of the defendants, and the only question in the case is whether Pinney acted within the scope of his authority.

By the eighth article of the agreement of September 23, 1895, Pinney was authorized to sell and dispose of the shares of stock "upon the terms and in the manner following, to wit: No shares of stock shall be sold for a less gross sum than the minimum price fixed therefor by the parties of the first part [the defendants], and all sales shall be for cash." The defendants were to have the right to alter the minimum price at their pleasure; but notice in writing of all changes in the minimum price was to be delivered personally to Pinney, by the defendants, through a certain bank or trust company. The minimum price was fixed at fifty dollars a share. By the supplementary agreement of September 30, the minimum price was fixed at fifteen dollars a share, "subject to the right of the parties of the first part to said agreement to alter the same at their pleasure."

By the agreement between Pinney and the plaintiff made on March 23, 1896, the plaintiff agreed to pay $1,500,000 to Pinney "on or before November 8, 1896," and upon such payment Pinney agreed to transfer to the plaintiff one hundred thousand shares of stock. The plaintiff also had the right to make certain partial payments in advance, and receive an equivalent amount of stock.

It seems to us to be too ·plain for argument that Pinney, acting under a power which allowed him to sell for cash, had no authority to sell on credit. *Bliss* v. *Arnold*, 8 Vt. 252. *Catlin* v. *Smith*, 24 Vt. 85. *Chapman* v. *Devereux*, 32 Vt. 616. *Steward* v. *Scudder*, 24 Zabr. 96. *Monson* v. *Kill*, 144 Ill. 248. *In re Palliser*, 136 U. S. 257. *De Sollar* v. *Hanscome*, 158 U. S. 216, 222. To what extent an agent authorized to sell for cash may give a credit by the usages of the business in which his principal is engaged, it is unnecessary to inquire, for there is no evidence of any such usage in this case. See *Clark* v. *Van Northwick*, 1 Pick. 343.      *Exceptions overruled.*