## CONSOLIDATED CANAL COMPANY *v.* MESA CANAL COMPANY.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 200. Submitted March 15, 1900. — Decided April 9, 1900.

This court, in view of the finding of the court below as to the influence of the dam placed by the Mesa Company upon the flow of water in the canal of the Consolidated Company, is concluded as to the question of fact.

An injunction will not issue to enforce a right that is doubtful, or to restrain an act, the injurious consequences of which are doubtful.

The dam built by the Mesa Company although it had the effect of raising the flow of water in its canal so as to destroy the water power obtained by the Consolidated Company through the construction of its canal, was not an infringement of the rights secured to the Consolidated Company under the contract set forth in the statement of the case.

THIS case comes on appeal from a decision of the Supreme Court of the Territory of Arizona, 53 Pac. Rep. 575, affirming

a decree of the District Court of Maricopa County in favor of the defendant in a suit brought by the appellant to restrain the defendant from maintaining in its canal a dam in such a way as to impede the flow of water in appellant's canal, or to destroy a certain water power claimed by appellant.

The facts as shown by the findings and statement prepared by the Supreme Court are as follows: The appellee was the owner of the Mesa Canal. On January 10, 1891, it made a contract with A. J. Chandler, who subsequently transferred his rights thereunder to the appellant. The material portions of the contract are as follows:

"This article of agreement, made and entered into this 10th day of January, A. D. 1891, by and between the Mesa Canal Company, a corporation duly organized and legally existing under and by virtue of the laws of the Territory of Arizona, having its principal office and place of business at Mesa city in the county of Maricopa and Territory of Arizona, party of the first part, and A. J. Chandler of the city of Phœnix, in the county and Territory aforesaid, party of the second part, witnesseth:

"That, whereas, the said party of the first part is an irrigating corporation, and as such is now the owner operating the Mesa Canal in said county and Territory.

"And, whereas, said party of the second part desires to increase the size and capacity of said canal between the point in Salt River where the water is now taken out, or by consent of the directors of the Mesa Canal Company may hereafter be taken out, and a point in said Mesa Canal known as 'Ayers' head gate,' so as to increase the flow of water through said portions of said canal as aforesaid, and for the purpose of the party of the second part, his associates and assigns, obtaining water thereby through said canal, and in order to have the said canal increased in size, dimensions and capacity without cost or expense to said party of the first part, and without in any way interfering with the rights, titles, interests nor privileges of said party of the first part in and to said canal and the water flowing through said canal, except as hereinafter provided.

*　　*　　*　　*　　*　　*　　*　　*

" Now, therefore, the Mesa Canal Company, party of the first part, for and in consideration of the sum of one dollar to it in hand paid by the party of the second part, the receipt whereof is hereby acknowledged, and for the further consideration and purposes herein contained and expressed, does for itself and for its successors or assigns hereby grant unto the said A. J. Chandler, his associates, heirs or assigns, forever, the following rights and privileges upon the terms and conditions herein expressed, viz. :

" That the said A. J. Chandler, his associates, heirs or assigns, shall have the right and privilege of entering upon any and all of the following portions of said Mesa Canal at any time prior to the first day of March, A. D. 1891, for the purpose of widening and enlarging and increasing the size and capacity of said Mesa Canal between the point in Salt River where the water is now or may hereafter be taken out for said canal, and a point on said canal known as ' Ayers' head gate,' and enlarge and increase the size and dimensions of the main dam and head gates at the point of commencement of said canal in Salt River, and enlarge and increase the size and capacity of said Mesa Canal so that the same when so enlarged and increased in size shall have a carrying capacity in addition to its present carrying capacity not exceeding forty thousand inches of water miners' measurement, nor less than ten thousand inches of water miners' measurement, and said enlargement shall be fully made and completed by the thirtieth day of December, A. D. 1891. The present carrying capacity of said Mesa Canal for the purpose of this agreement shall be seven thousand inches miners' measurement.

" All the cost and expense of enlarging and increasing the size of said dam, head gate and canal as aforesaid shall be borne and paid by the party of the second part, his associates, heirs or assigns, forever. And said enlargement shall be made without in any way interfering with any of the rights, titles, interests or privileges of said party of the first part in and to the said canal and the water flowing through said canal, except as hereinafter provided.

" The party of the first part hereby reserves the right to fur-

ther enlarge said portion of the Mesa Canal whenever they deem it necessary to do so, provided such enlargement shall not interfere with or lessen the rights or privileges herein granted to the party of the second part, his associates or assigns.

\*    \*    \*    \*    \*    \*    \*    \*

" Said party of the second part, his associates or assigns, shall in enlarging said main dam, head gates and canal as aforesaid, in all respects enlarge said dam, head gates and canal in a good, substantial and workmanshiplike manner, according to the most approved methods of constructing and building irrigating canals.

" All suits, liabilities, costs, expenses or judgments, and all damages or loss incurred or sustained by the party of the first part caused by said enlargement, shall be borne by the party of the second part, his associates or assigns forever, and all suits or proceedings against the party of the first part by reason of said enlargement to be defended at the expense of the party of the second part.

" It is expressly understood and agreed by the parties hereto, their successors or assigns, that at all times when there is an abundance of water in Salt River liable to appropriation and flowage through said canal when so enlarged, then and at all such times the said party of the first part shall have the right to use from said canal in addition to the amount hereinbefore specified as the capacity of said canal two thousand inches of water, miners' measurement.

" The management and control of the canal between the point known as ' Ayers' head gate ' to and including the dam in Salt River when so enlarged as aforesaid shall be in the party of the second part, his heirs, associates or assigns.    Provided, that the party of the second part, his heirs, associates or assigns, shall before he or they are entitled to receive or use any water through said canal, first deliver to the party of the first part, their heirs or assigns, at the point in said Mesa Canal known as ' Ayers' head gate,' and shall continue to deliver, the seven thousand inches of water miners' measurement above expressed as the carrying capacity of said Mesa Canal, or such portion thereof as may be apportioned to said Mesa Canal by decree of any court.    Provided, the stockholders who are now using or may

hereafter use water above the 'Ayers' head gate' shall have their water delivered to them as at present above the 'Ayers' head gate' aforesaid, or said stockholders shall have their water delivered to them at the 'Ayers' head gate' with the other stockholders, as they may demand. Provided, further, that the water shall be delivered to the party of the first part after the completion of said canal as aforesaid for a period of five years without cost to the party of the first part, their successors or assigns, and thereafter for a sum not exceeding three dollars per share per year forever, to be paid for in the same manner as they now pay for the same.

     *     *     *     *     *     *     *     *

"Provided, further, that if the said party of the second part, his associates, heirs or assigns, shall neglect to deliver water as agreed herein, or shall fail to carry out any of the terms of this agreement, and shall be notified by the directors of the Mesa Canal Company of such failure or neglect to carry out the terms of this agreement, and shall still neglect to carry out the terms of this agreement for a period of ten days thereafter, or in such case as a break in the canal, head gates and dam whereby the water is turned out for a period of five days, then and at all such times it is hereby agreed by the party of the second part, his heirs, associates or assigns, that the directors of the Mesa Canal Company shall have the right and power to take full charge and control of said enlarged portion of said Mesa Canal without process of law, and the same shall become the property of the Mesa Canal Company and shall so remain until the party of the second part, his associates, heirs or assigns, shall fully comply with the term and requirements of this agreement, and then shall revert back to the party of the second part, his associates, heirs or assigns, and shall be and remain in the party of the second part, his associates, heirs or assigns, so long as the terms of this agreement shall be by them complied with.

" This agreement shall not give or convey to the party of the second part, his associates, heirs or assigns, any title or ownership in or to the capital stock of said Mesa Canal Company, but shall only convey such privileges and rights as are herein mentioned."

The appellant, as the transferee from Chandler, enlarged and reconstructed the Mesa Canal down to a place called the "Division Gates," which point had by mutual consent been substituted for Ayers' head gate as the point of division of the waters, and delivery by the appellant to the appellee of the water to which the latter was entitled. In thus enlarging and reconstructing the canal the appellant raised the grade thereof for the purpose of carrying the water at a higher elevation, thereby enabling the canal to cover more and other lands, and at the point where the division gates were located the elevation was about five feet above the grade of the canal before reconstruction, and by the construction of those gates at that point the appellant delivering the water to the appellee secured a fall of five feet in the water thus delivered.

Other findings were as follows:

"After appellant had delivered the water in the manner aforesaid for some years, the appellee built a dam in its canal a short distance below the division gates that raised the water and caused it to flow through a lateral ditch, which enabled the appellee to irrigate some lands on which it had not been able to place water through its canal from its former elevation. The effect of this raise in the water was to reduce the fall at the division gates.

"After appellee had built its dam and backed up the water, as aforesaid, appellant had constructed a water wheel and a mill for grinding grain to be driven thereby, and had erected them at the division gates, so that the wheel was turned by the water as it fell from the division gate into the Mesa Canal, a distance of about five feet. Afterwards appellant increased the height of the dam that it had formerly built to such an extent that it raised the surface of the water and backed the same up against the division gate in such manner as to destroy three and one half feet of the five feet fall and totally destroyed the water power.

"The water raised by the dam and the water affording the water power thus destroyed is the 7000 inches of water which appellant is obligated by the terms of the agreement afore-

mentioned to first deliver to the appellee before said appellant is entitled to receive or use any water through said canal.

"A further result of the erection of the water in appellee's canal below the division gates was to very slightly, if at all, impede the flow of water in appellant's canal above the division gates and thereby detract very slightly from the carrying capacity of appellant's canal.

"The cost of the reconstruction of the canal from Ayers' head gate to the division gates exceeded ten thousand dollars, and the water power created at the fall was equal to about forty horse power."

*Mr. John D. Pope* for appellant.

*Mr. C. M. Frazier, Mr. Rufus C. Garland* and *Mr. W. W. Wright, Jr.*, for appellees.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

While the title to any portion of the Mesa Canal may not have been changed by this contract, yet for convenience we shall speak of that portion thereof under the control of the appellant as its canal, and of the balance as the appellee's canal.

In view of the finding of the Supreme Court we need not stop to consider any question in respect to the influence of the dam placed by appellee upon the flow of water in appellant's canal, and this notwithstanding the fact that in the trial of the case much of the testimony, pro and con, was in reference to that matter. We are concluded as to the question of fact by the finding, and it is familiar law that injunction will not issue to enforce a right that is doubtful, or to restrain an act the injurious consequences of which are merely trifling. *Parker* v. *Winnipiseogee Lake Company*, 2 Black, 545, 552.

We pass, therefore, to the only substantial question, which is, whether the dam built by appellee, having the effect as it did of raising the flow of water in its canal so as to destroy the water power obtained by appellant through the construction of

its canal, was an infringement of the rights secured to appellant by the contract of January 10, 1891. The appellant seems to be of the opinion that by that contract it had a right to raise its canal to such an elevation as it saw fit while the appellee had no such liberty. We search the contract in vain for any express stipulation to that effect. If the appellant had a right to raise the grade of its canal five feet, we see nothing to forbid the appellee to raise its grade to the same height. There is no reference in the contract to water power. Obviously the only matter then contemplated was a supply of water for irrigation purposes. The appellee is styled "an irrigating corporation, and as such . . . operating the Mesa Canal." The expressed purpose of appellant was "obtaining water thereby through said canal." The water power was evidently an afterthought, suggested by the condition of things when the appellant had finished the reconstruction of its canal. The appellant must point to some stipulation in the contract which the action of the appellee has broken, for the entire right given by it to the appellant is declared to be "without in any way interfering with the rights, titles, interests or privileges of said party of the first part in and to said canal, and the water flowing through said canal, except as hereinafter provided."

No right passed to the appellant except that which was expressly named. All other rights, titles, interests or privileges were retained by the appellee. The appellant was to deliver the 7000 inches of water out of the enlarged canal, and the appellee was to receive and pay therefor. The appellant was to increase the carrying capacity of the canal not less than 10,000 nor more than 40,000 inches, and this surplus water it had a right to use. But the appellee reserved the right if it saw fit at any time to still further enlarge the carrying capacity of the canal, and the only limitation in respect to such enlargement was that it should not "interfere with or lessen the rights" granted to the appellant. What were those rights? Obviously the right to take and use the surplus over 7000 inches of water flowing through the canal, as enlarged by appellant.

It may be that neither party to this contract could change the grade of its canal so as to compel the other to make a like

change of grade. Thus, when the appellant, in the first instance, enlarged and reconstructed its canal, it raised the grade five feet. If it had seen fit to lower the grade five feet, instead of raising it, doubtless in order to fulfil its contract of delivery it would have had to provide some pumping arrangements, and could not have demanded that the appellee lower its grade five feet in order to receive the water. And so it may be that the appellee could not now raise its grade ten feet and then demand that the appellant either raise its grade five feet more or put in pumping works to insure the delivery of the water. But as to any action which does not interfere with the delivery of water by the appellant to the appellee, there is nothing in the contract to restrain at least the appellee from doing as it pleases with its canal.

It does not appear that the appellee was acting maliciously and for the mere sake of injuring the appellant. On the contrary, its purpose as disclosed was to irrigate lands which it had not theretofore been able to irrigate from its former elevation, and we know of no reason why it had not a right to do so. It made no stipulation as to the lands which it should irrigate. It had the same right which it had before the contract of enlarging or reducing the number of acres reached by the flow of its water. It does not appear that the lands which it was seeking to irrigate by raising the elevation in the upper part of its canal could have been reached in any other way, and it was not bound to desist from any enlargement of its own business for the mere benefit of the appellant or to enable the latter to enjoy something which was not conveyed to it by the terms of the contract.

We need not stop to inquire what are the rights of separate appropriators of water, in the absence of a contract. We are dealing with those which grow out of this contract, bearing in mind that all rights are reserved to the appellee which are not in terms granted to the appellant. If 7000 inches of water was more than sufficient to supply the territory which it was then irrigating, there is nothing which forbade the appellee to enlarge that area, and in order to enable it to reach that larger area it might make any change in the construction of

its ·canal—at least any change which did not interfere with the free delivery of the water by the appellant.

We see no error in the decision of the Supreme Court of Arizona, and its judgment is

.*Affirmed.*