# McHENRY HOWARD ET AL.

## *vs.*

# WESTERN MARYLAND RAILWAY COMPANY ET AL.

*Injunction Refused—Issue as to Title.*

When an injunction is sought as a primary, and not a mere auxiliary, remedy, and the title relied on is contested on grounds apparently substantial, such relief will not be decreed until the title has been established at law. .                              p. 48

Only an absolutely clear and urgent right could justify a court of equity in causing an interference with railway operations and the convenience of the public by the issue of a mandatory injunction compelling the removal of the tracks and buildings of a railway company from land claimed by plaintiff. p. 49

Where, after an offer by the equity court to retain the bill for an injunction until the question of plaintiff's title could be determined in a court of law, the plaintiff refused to resort to a court of law for that purpose, it was proper to dismiss the bill. p. 50

*Decided February 2nd, 1921.*

Appeal from the Circuit Court for Baltimore City (AMBLER, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Charles Morris Howard* and *Frank E. Welsh,* with whom was *Thomas Hughes* on the brief, for the appellants.

*George R. Gaither* and *George P. Bagby,* for the appellees.

URNER, J., delivered the opinion of the court.

By permission of the municipal authorities the Western Maryland Railway Company occupies with its tracks the bed of Buren Street south of Terminal Street, in the City of Baltimore. To the east of Buren Street is Liberty Alley, which the city has allowed the railway company to wholly appropriate for purposes connected with the use of its roundhouse and turntable located on the adjacent ground, of which it is the owner. The bill in this case was filed by persons claiming to own the reversion in the street and alley just mentioned, and the object of the suit is to procure a mandatory injunction compelling the railway company to remove therefrom all of its tracks and structures except its two main tracks on Buren Street, to the maintenance of which, as against the plaintiffs, the company is conceded to have a prescriptive right. The tracks on Buren Street, of which the plaintiffs complain, diverge from the main tracks and extend over the abutting ground of the railway company into its passenger and freight terminals. For the origin of their title the plaintiffs refer to a deed executed in 1804, which conveyed to the persons, under whom they claim, a tract of land through which the street and alley referred to were located. The grantees in that deed were John Eager Howard, Josias Pennington and James Ogleby, who partitioned among themselves the abutting lots by conveyances which are said to have failed to divest them of their ownership of the fee in the street and alley as tenants in common. It is upon the theory of their succession to the undivided interests of those co-tenants that the plaintiffs in the pending suit assert the right in controversy.

Upon the evidence in the case it was concluded by the court below that the plaintiffs have no title to the bed of Liberty Alley or to a part of the bed of Buren Street, and that as to the remainder of the street area in question their reversionary interest may have become barred by the defendant's adverse possession. The question of title thus involved was held to be one which a court of equity should not undertake

to determine. The court offered, however, to retain the bill for a reasonable time in order to afford the plaintiffs an opportunity to have their claim of title adjudicated in an action at law. After a formal refusal by the plaintiffs to resort to a court of law for that purpose, the decree appealed from was passed, dismissing the bill of complaint.

The extraordinary process of injunction is never granted for the decisive and permanent enforcement of a right which is involved in reasonable doubt. It has been definitely and repeatedly held that when an injunction is sought as a primary, and not as a mere auxiliary, remedy, and the title relied upon is contested upon grounds which do not appear to be unsubstantial, the court will not decree such relief until the title has been established in a forum more appropriate to the determination of such an issue. Some expressions in former decisions on this subject may be quoted to show the emphasis which has been laid upon the principle just stated. In the injunction case of *Whalen* v. *Delashmutt*, 59 Md. 252, it was said: "The determination of this contention depends upon the true construction of the title deeds under which the respective parties claim, upon the exact location thereof, and upon questions of adverse holding and user by the owners of the respective premises. These are all purely legal rights and questions, not at all appropriate to a court of equity. They appropriately belong to a court of law, to be tried and determined in an action of ejectment or an action of trespass." In *Clayton* v. *Shoemaker*, 67 Md. 219, the court, after referring to the conflicting claims of right under paper title and adverse possession, said: "Here then we are confronted with questions directly relating to the title to land, and although in some cases, where irreparable injury might result from delay, a temporary injunction ought to be granted until the legal title can be determined in the proper forum, a court of equity will not pass a decree operating as a final decision of the rights of parties. To do so would be tantamount to a substitution of chancery jurisdiction for that of courts of law in deciding questions directly relating to the title to real estate:

and it is apparent that such an assumption of jurisdiction would have a strong tendency to subvert an important part of the established jurisprudence of the State." The case of *Bernei* v. *Sappington*, 102 Md. 185, was one in which there was found to be "a real dispute as to the plaintiffs' title," and an injunction was denied for that reason. So, in the case of *Oberheim* v. *Reeside*, 116 Md. 274, it was said that "where relief by injunction is sought as a determinative and not as an ancillary remedy, it is, of course, essential that the right of the plaintiff to the invaded estate should be free from any reasonable doubt or dispute. When the title relied upon is controverted, and it appears that there is some ground for the objection, a court of equity will not interfere, except for temporary protective purposes, until the question of legal right can be decided by a court of law. * * * Such a situation is usually presented where the title involved depends upon or is affected by adverse user." To the same effect are the decisions in *Gulick* v. *Fisher*, 92 Md. 353; *Carswell* v. *Swindell*, 102 Md. 641; *Greenbaum* v. *Harrison*, 132 Md. 34; and other cases.

The principle thus firmly settled is particularly well adapted to the case before us on this appeal. Only an absolutely clear and urgent right could justify a court of equity in causing such an interference with the defendant's railway operations and the convenience of the public as would result from the granting of the injunction prayed in the pending bill. Even if the plaintiffs' title were indisputable, an opportunity would be given the defendant to acquire it by condemnation before the issuance of the injunction. But there is a serious and reasonable dispute as to the plaintiffs' claim of title to every part of the ground with which this litigation is concerned. As to a portion of the area in controversy the court below reached the conclusion that the plaintiffs in fact have no title, while as to the remainder there is considerable support to be found in the evidence for the defense of adverse possession. The determination of those questions depends upon the construction of conveyances made by the co-owners

from whom the right asserted by the bill of complaint is said to have been derived, and upon the effect of proof as to the extent of the use and occupation of part of the ground by the defendant for a period of thirty years prior to the suit. Conditions are thus presented which make it plain that the proposal of the lower court to retain the bill until the question of title could be determined in a court of law afforded the full measure of consideration to which the plaintiffs' claim was then entitled, and that the dismissal of the bill was the only alternative, in view of their refusal to avail themselves of that right.

*Decree affirmed, with costs.*