**KELLIHER et al. v. STONE & WEBSTER, Inc.**

No. 7553.

Circuit Court of Appeals, Fifth Circuit.

Feb. 7, 1935.

BRYAN, Circuit Judge, dissenting.

332

S. H. Harris, J. E. Kennedy, and J. Uhle Bethell, all of St. Petersburg, Fla., for appellants.

A. G. Turner, of Tampa, Fla., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Euphemia L. Kelliher, joined by her husband, brought trespass quare clausum fregit against Stone & Webster, Inc., for entering upon certain lands of hers on the water front of Hillsborough Bay, Fla., and there depositing earth and constructing a causeway and dykes, to the great damage of the land. A plea of not guilty was filed, and one that the only part of the land entered was a public street of the city of Tampa and that the work was done under the city's license to improve the street. A plea of res judicata was also made that in an equity suit brought by the same plaintiffs against the city of Tampa, Stone & Webster, Inc., and others in a state court the same cause of action had been adjudged against the plaintiffs on the merits, the record of the suit being attached to the plea as a part of it. Demurrers to the special pleas were overruled. The case went to trial on a stipulation of fact that Mrs. Kelliher has a complete chain of conveyances of title from the United States, that subsequent to the original patent a part of the patented land was in 1888 subdivided into lots and a plat thereof recorded, which is exhibited, and which shows as lots 4 and 5 the high land on which Mrs. Kelliher's residence is located, with a strip between them and the bay designated as Bay street and with a narrow strip of land between the street and the water. This marginal strip, with a projection of it into the water, is platted as water lots 4, 5, and 6. The further stipulation is that Mrs. Kelliher "purchased under this plat" and that Stone & Webster, Inc., had entered on the strip shown as a street under license of the city of Tampa for the purpose of improving and opening it up as a highway of the city, and that it had made a fill as shown by another plat which indicates that not only was a part of the space platted for a street taken, but that the whole strip of land between the street and the water and some of the submerged land beyond it was filled in and occupied by the causeway. It was also stipulated that the exhibited copies of the record of the equity suit are true copies. The judge thereupon directed a verdict for the defendant on the plea of res judicata. This action, together with the overruling of the demurrer to the plea, makes the question raised on this appeal.

As presented by the stipulation of fact, the case seems to be that plaintiff has title to the land involved subject to such easements in the platted street as others buying lots with reference to the plat of 1888 may have, and subject to such rights as the city of Tampa may have acquired by a timely acceptance of the offer to dedicate the street which is implied in the record of the plat; but that the street, if effectively dedicated, does not cover the larger part of the land entered upon by the defendant. The directed verdict in defendant's favor must, therefore, be rested upon the defense of res judicata alone.

"While the enforcement of the rule of res judicata is essential to secure the peace and repose of society, it is equally true that to enforce the rule upon unsubstantial grounds would work injustice." City of Vicksburg v. Henson, 231 U. S. 259, 34 S. Ct. 95, 58 L. Ed. 209. "According to Coke, an estoppel must 'be certain to every intent'; and if upon the face of a record any thing is left to conjecture as to what was necessarily involved and decided, there is no estoppel in it when pleaded, and nothing conclusive in it when offered as evidence." Russell v. Place, 94 U. S. 606, 610, 24 L. Ed. 214. In considering what was involved and decided in a former judgment, the cases fall into two well-defined classes with a broad difference between them in the rule to be applied, to wit, those where the former suit was upon the same cause of action as the latter, and those where the causes of action are not the same but are so related that some fact or some issue is common to both. "Where the second suit is upon the same cause of action set up in the first suit, an estoppel by judgment arises in respect to every matter offered or received in evidence, or which might have been offered, to sustain or defeat the claim in controversy; but, where the second suit is upon a different claim or demand, the prior judgment operates as an estoppel only as to matters in issue or points controverted and actually determined in the original suit." Troxell v. Delaware, Lackawanna & Western R. R. Co., 227 U. S. 434, 33 S. Ct. 274, 276, 57 L. Ed. 586; Virginia-

Carolina Chemical Co. v. Kirken, 215 U. S. 252, 30 S. Ct. 78, 54 L. Ed. 179. "The scope of the estoppel of a judgment depends upon whether the question arises in a subsequent action between the same parties upon the same claim or demand or upon a different claim or demand. In the former case a judgment upon the merits is an absolute bar to the subsequent action. In the latter the inquiry is whether the point or question to be determined in the later action is the same as that litigated and determined in the original action." Tait v. Western Md. Ry. Co., 289 U. S. 620, 623, 53 S. Ct. 706, 707, 77 L. Ed. 1405. In the first class of cases the res which is judicata is the cause of action. When once presented to a court of competent jurisdiction and decided on its merits, the parties have had their day in court and that cause of action is gone, and failure to urge grounds to sustain it or to make direct defenses to defeat it is no justification for a new contest over it. Baltimore Steamship Co. v. Phillips, 274 U. S. 316, 47 S. Ct. 600, 71 L. Ed. 1069.[1]

In the second class of cases the res which may be judicata is the particular issue or fact common to both suits, and to conclude that particular issue or fact, it is necessary that the record of the former suit by itself or as aided by extrinsic evidence of what occurred at the trial should show with certainty that that fact or issue was indeed litigated and decided on its merits. To avoid confusing the two rules of conclusiveness, it is usual to refer to the first as res judicata and to the second as estoppel by judgment. "It is of the essence of estoppel by judgment that it is certain that the precise fact was determined by the former judgment." De Sollar v. Hanscome, 158 U. S. 216, 15 S. Ct. 816, 818, 39 L. Ed. 956. "To this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record * * * the whole subject-matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined. To apply the judgment, and give effect to the adjudication actually made, when the record leaves the matter in doubt, such evidence is admissible." Russell v. Place, 94 U. S. 606, 608, 24 L. Ed. 214.[2]

With the law thus stated, the first question to be faced is whether the same "claim or demand" or "the same cause of action" was determined in the equity suit as is asserted in this action at law for trespass. The decree purports to be a final one, upon the equitable merits of the cause. It is apparent that the same parties were adversaries in the equity suit and the same opposing titles to the same lands were relied on and the same trespass then incipient and threatened but now fully accomplished was referred to. The prayer in the equity suit was for temporary and permanent injunction, and a recovery of damages was not claimed. We do not think the suit in equity to enjoin a threatened trespass is the same cause of action as one at law for damages arising from its accomplishment. The test of identity usually laid down is whether the same evidence would suffice to sustain both. 15 R. C. L., Judgments, § 439, and cases cited. In the two suits under consideration, the plaintiffs would present the same evidence of title and some evidence of wrongful entry, but there the cases diverge. Evidence of any damage or indeed of entry without actual damage would entitle the plaintiff as of right to a recovery at law, but to obtain an injunction in equity there must be alleged and proved not such damages as could be recovered at law but extraordinary circumstances showing that the remedy at law is inadequate, such as that the trespasser is insolvent, or that the damage will be irremediable. 14 R. C. L., Injunctions, §§ 143, 146. One might thus easily fail to obtain an injunction and yet be entitled later to recover damages at law. Laches may defeat an injunction, and when a public improvement is sought to be stopped, the inconvenience to the public, as

---

[1] Counterclaims are not concluded unless presented and determined. Virginia-Carolina Chemical Co. v. Kirven, 215 U. S. 252, 30 S. Ct. 78, 54 L. Ed. 179.

[2] The court's opinion or charge may be looked to. United Shoe Machinery Co. v. United States, 258 U. S. 452, 42 S. Ct. 363, 66 L. Ed. 708; Oklahoma v. Texas, 256 U. S. page 88, 41 S. Ct. 420, 65 L. Ed. 831. Matters leading up to the order, including briefs of counsel, are mentioned in West v. Standard Oil Co., 278 U. S. 201, 49 S. Ct. 138, 73 L. Ed. 265. In Bates v. Brodie, 245 U. S. 529, 38 S. Ct. 182, 62 L. Ed. 444, L. R. A. 1918C, 355, parol evidence was extensively used. Such evidence, however, cannot contradict the record. 15 R. C. L., Judgments, § 532.

weighed against a slight or remediable wrong to the plaintiff, may determine the court of equity against this discretionary remedy. See New York City v. Pine, 185 U. S. 93, 22 S. Ct. 592, 46 L. Ed. 820; Beals v. City of Atlanta (C. C. A.) 61 F.(2d) 439; McCann v. Chasm Power Co., 211 N. Y. 301, 105 N. E. 416. The two causes of action differ, not only in the nature of the remedy sought, but in their essential content. Compare Northern Assurance Co. v. Grand View Building Association, 203 U. S. 106, 27 S. Ct. 27, 51 L. Ed. 109; Opelousas-St. Landry Securities Co. v. United States (C. C. A.) 66 F.(2d) 41; Davis v. Turner (Fla.) 147 So. 224; Meyn v. Kansas City, 91 Kan. 29, 136 P. 898.

 It therefore becomes necessary to inquire next whether the special issue of the validity of this plaintiff's title as against the city's right to make the improvement was actually determined in the equity suit, the face of the record alone being presented to show it. Does this record clearly show that this matter was actually decided, or what would amount to the same thing was necessarily decided in order to reach the judgment that was rendered? By the city's answer, Mrs. Kelliher's title to the high lots on which her residence stands was admitted, but her right or title to the street or to the lots across it and adjacent to and under the water was denied, and the title to these last was asserted to be in the city under a public act of the Legislature, and a right to the street by an accepted dedication was set up. That damage would be done by the public improvement was flatly denied, and it was alleged that the causeway would enhance the value of the lots which plaintiff owned. At its conclusion, the answer asserted that the bill was without equity. A preliminary injunction granted ex parte was, after answer and on hearing, dissolved. Several months later the city of Tampa had the clerk enter an order setting the case down for final hearing on bill and answer, no evidence having been taken in the cause. No notice thereof to the plaintiffs is recited, but on May 4, 1928, the following decree was entered: "This cause having come on for hearing before the Court on April 17, A. D. 1928, and the Court having taken the same under advisement and being now advised of its judgment or decree to be entered in the premises: The Court finds that the equities of said cause are with the defendants and not with the complainants. It is thereupon considered, ordered, adjudged and decreed that said cause and the bill of complaint therein be and the same is hereby dismissed." The title of the complainants and the right of the city to the street and to the water lots were all in issue and might have been decided. If the decree had been one for an injunction, it would appear clearly that they were decided, for no perpetual injunction could have been decreed without deciding that the plaintiffs had title and the city had no right to do what was threatened. But the general decree for the defendants carries no necessary implication of the converse. The decree does not in terms decide the title to the disputed land. Its general finding that the equities are with the defendants and not with the complainants does not import a decision as to who had the legal title. It was not necessary to decide that question, or even proper to do so, for the general rule has long been settled that when the legal title is not admitted but is disputed, a court of equity will not make a permanent injunction which depends on the title, but will send the parties to a court of law to settle it. 32 C. J., Injunction, §§ 15, 151, 175. The exception is when the threatened trespass goes to destroy the substance of the estate, as in mining coal or other minerals, or cutting trees, or the damage will otherwise be irremediable. Even then the injunction is ordinarily a temporary one until the complainants can establish their title in a court of law. Erhardt v. Boaro, 113 U. S. 537, 538, 5 S. Ct. 565, 28 L. Ed. 1116; Wadsworth v. Goree, 96 Ala. 227, 10 So. 848; Hamilton v. Brent Lumber Co., 127 Ala. 78, 28 So. 698. The rule is applied in Florida. Carney v. Hadley, 32 Fla. 345, 14 So. 4, 22 L. R. A. 233, 37 Am. St. Rep. 101; Cowan v. Skinner, 52 Fla. 486, 494, 42 So. 730, 11 Ann. Cas. 452. "An injunction will not issue to enforce a right that is doubtful, or to restrain an act, the injurious consequences of which are doubtful." Consolidated Canal Co. v. Mesa Canal Co., 177 U. S. 296, 20 S. Ct. 628, 44 L. Ed. 777; Burroughs v. City of Dallas (C. C. A.) 276 F. 812. "The extraordinary process of injunction is never granted for the decisive and permanent enforcement of a right which is involved in reasonable doubt. It has been definitely and repeatedly held that when an injunction is sought as a primary, and not as a mere auxiliary, remedy, and the title relied upon is contested upon grounds which do not appear to be unsubstantial, the court will not decree such relief until the title has been established in a forum more appropriate to the

determination of such an issue." Howard v. Western Maryland Ry. Co., 138 Md. 46, 113 A. 574, 575. But it is suggested that the city, as a public body, was in effect alleged to be taking property without paying for it, contrary to the Florida Constitution, and that in such a case, if plaintiff had title, an injunction would have issued as of right to prevent the taking. Some courts have so held, but others have regarded an unconstitutional taking as only a form of trespass in which irremediable injury must be shown to authorize injunction. 10 R. C. L., Eminent Domain, § 193; 20 C. J., Eminent Domain, § 528 et seq.; D. M. Osborne & Co. v. Mo. Pac. R. R. Co., 147 U. S. 248, 13 S. Ct. 299, 37 L. Ed. 155; Hurley v. Kincaid, 285 U. S. 95, 52 S. Ct. 267, 76 L. Ed. 637. But the question is not of importance here, for the city by its answer expressly disclaimed any right of eminent domain, but instead asserted a title to the water lots and to the street as against the plaintiff. The case as thus limited by the uncontested answer was not one of a taking without compensation, but was the ordinary one in which an alleged trespass is justified by a denial of the plaintiff's title and an assertion of title by the defendant. Both because the legal title was in dispute, and because no irremediable damage was to be done by this public improvement according to the unrebutted answer, the Florida judge might properly have concluded that plaintiff had no equity to an injunction no matter what her legal rights might be. Meyn v. Kansas City, 91 Kan. 29, 136 P. 898; McCann v. Chasm Power Co., 211 N. Y. 301, 105 N. E. 416; New York City v. Pine, 185 U. S. 93, 22 S. Ct. 592, 46 L. Ed. 820. Since the judgment might have gone on either of several issues, there is no estoppel proved touching any of them. If a decision can be referred to the exercise of an equitable discretion, there is no bar of legal rights. Langford v. Bond Realty Corporation (C. C. A.) 47 F.(2d) 480. If the uncertainty can be helped by extrinsic evidence, the burden is on him who asserts an estoppel to produce the evidence. American Trust Co. v. Butler (C. C. A.) 47 F.(2d) 482; Sacks v. Stecker (C. C. A.) 62 F.(2d) 65; Draper v. Medlock, 122 Ga. 234, 50 S. E. 113, 69 L. R. A. 483, 2 Ann. Cas. 650. It not appearing with certainty that the legal rights of these parties had been actually determined on their merits, the verdict ought not to have been so directed. The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

BRYAN, Circuit Judge.

I dissent because I believe it was decided in the equity suit that the title to the land in dispute was in the city of Tampa. The decree in that suit was upon bill and answer after the time for taking testimony had expired, and found the equities to be with the defendants, of which the appellee here was one, "and not with the complainants," who are appellants here, and simply dismissed the bill of complaint. There was no saving clause to the effect that the dismissal was without prejudice, or because there was an adequate remedy at law. The bill alleged more than a mere trespass; it alleged the taking of plaintiffs' property for the purpose of widening a street and building a highway. The city did not deny the taking, but admitted and justified it, claiming title in itself. It is too much to assume that the equity court might have refused to enjoin the taking of private property without just compensation being first paid or secured, in disregard of article 16, § 29, of the state Constitution. In DaCosta v. Dibble, 40 Fla. 418, at page 424, 24 So. 911, 913, it is said: "While every dismissal upon a final hearing is not necessarily an adjudication on the merits, yet the rule is that where the cause is at issue, and on final hearing, either upon pleadings and testimony, or upon the pleadings after the time for taking testimony has expired, a dismissal of the bill by the court, even if done on complainant's motion, is deemed to be a dismissal upon the merits; this being a conclusive presumption from the record, where the order is not made 'without prejudice,' and nothing appears to show that the dismissal was upon other grounds." To the same effect is Lyon v. Perin, etc., Co., 125 U. S. 698, 8 S. Ct. 1024, 31 L. Ed. 839. See, also, Robbins v. Hanbury, 37 Fla. 468, 19 So. 886; Gray v. Gray, 91 Fla. 103, 107 So. 261. Under the Florida practice at least, a decree finding the equities with the defendant and unconditionally dismissing the bill of complaint is a decision in favor of the defendant on the merits of the issues involved. Such a decree is not subject to be explained away on the theory that possibly the court meant to hold that it was without jurisdiction, or that the plaintiff had an adequate remedy at law.