Stewart AUSTIN, Daniel J. Daly, and Leonard Hoffman, Plaintiffs,

v.

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Defendant.

No. 92 Civ. 1576 (MBM).

United States District Court, S.D. New York.

March 26, 1992.

Irwin Geller, Seth Goldstein, Flushing, N.Y., for plaintiffs.

Charles E. McTiernan, Jr., Lawrence S. Menkes, Paula F. Jones, New York City, for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

The three plaintiffs are stockholders of defendant; in addition, plaintiff Stewart Austin is a business agent and plaintiffs Daniel J. Daly and Leonard Hoffman are shop stewards of Local 1–2, Utility Workers Union (the "Union"), which represents defendant's employees. They sue as shareholders only. Defendant supplies gas, electricity and steam to customers in the New York metropolitan area.

Plaintiffs would compel defendant to include in its proxy materials for the upcoming annual shareholders meeting a nonbinding resolution endorsing the idea that defendant's employees should be allowed to retire after 30 years of service, regardless of age. Plaintiffs seek a preliminary injunction to put that proposal in the proxy materials, and a permanent injunction compelling defendant henceforth to accept for inclusion in its proxy materials all proposed shareholder resolutions,

> (a) the specific and particular terms of which, are not mundane, ordinary, or concerned with the minutiae of operating the day-to-day business of Con Edison, and which are not disqualified or excepted by any other law or regulation; or
>
> (b) which propose to alter the form or amount of compensation to executives, officers and/or employees of the corporation in a significant, noteworthy or extraordinary form or amount and which are not disqualified or excepted by any other law or regulation.

Defendant has moved for summary judgment dismissing the complaint. For the reasons set forth below, plaintiffs' motion for a preliminary injunction is denied, defendant's motion is granted, and the complaint is dismissed.

## I.

The few relevant facts are uncontested. On December 30, 1991, plaintiffs' counsel presented to defendant for inclusion in its proxy materials a proposed corporate resolution endorsing various changes in the pension rights of defendant's employees, most significant of which is one that would permit employees to retire with no actuarial reduction of their pension rights after 30 years of service, regardless of age. Under the current plan, the normal retirement age is 65, but employees may retire at or after age 60 if they meet the requirements of the so-called "rule of 75"—*i.e.*, if their age plus years of service equal or exceed 75. The pension plan changes outlined in the proposed resolution have been announced by the Union to be a goal in its upcoming contract negotiations with Con Edison. (Ortiz Aff. ¶ 7; Plaintiffs' Reply Mem. at 7)

On January 16, 1992, defendant wrote to the Securities and Exchange Commission stating its belief that the proposed resolution need not be included in the proxy materials, because the proposed resolution dealt merely with the company's day-to-day operations and because it was designed in essence to confer a benefit on and further a personal interest of its proponents that was not common to shareholders generally. Defendant sought assurance in a form referred to as a "no-action letter" that the SEC staff would not recommend that that agency sue to compel defendant to include the proposed resolution in the proxy materials. On February 6, 1992, plaintiffs' counsel opposed issuance of such a letter in an 8–page submission to the SEC. On February 13, 1992 the SEC staff issued the requested no-action letter because there was a basis for Con Edison's view that the proposed resolution dealt with a matter relating to the conduct of the company's ordinary business operations, *i.e.*, general compensation issues. (Complaint Exh. D)

The no-action letter from the SEC left plaintiffs free to sue to compel inclusion of their proposal in Con Edison's proxy materials, which they did on March 4, 1992.

## II.

Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), makes it unlawful for any person to solicit proxies with respect to a registered security in violation of SEC rules. Rule 14a–8(a), 17 CFR § 240.14a–8(a), directs as follows:

> (a) If any security holder of a registrant [defined as the issuer of the securities in respect of which proxies are to be solicited—17 CFR § 240.14a–1(i)] notifies the registrant of his intention to present a proposal for action at a forthcoming meeting of the registrant's security holders, the registrant shall set forth the proposal in its proxy statement and identify it in its form of proxy and provide means by which security holders can make the specification required by [the rule relating to the marking of a proxy].

Con Edison cites two exceptions to that requirement. One permits the issuing company to refuse to include a proposal in its proxy materials "[i]f the proposal deals with a matter relating to the conduct of the ordinary business operations of the registrant." 17 CFR § 240.14a–8(c)(7). The other permits the same result "[i]f the proposal relates to the redress of a personal claim or grievance against the registrant or any other person, or if it is designed to result in a benefit to the proponent, or to further a personal interest, which benefit or interest is not shared with the other security holders at large." 17 CFR § 240.-14a–8(c)(4).

To the extent plaintiffs seek a preliminary injunction under Rule 14a–8(a), they must meet the familiar standard of *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir.1979): irreparable injury, and either a likelihood of success on the merits or a fair ground for litigation coupled with a balance of hardships tipping decidedly in their favor. Moreover, the grant of preliminary relief in this case would give these movants everything they seek other than a general injunction that goes no further than the requirements of existing law. Therefore, they "must show a *substantial* likelihood of success on the merits, rather than merely a likelihood of success." *Johnson v. Kay*, 860 F.2d 529, 540 (2d Cir.1988) (emphasis in original). These standards, in turn, should be applied with relevant burdens of proof in mind, *cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) ("[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case."); in particular, it is Con Edison's burden to prove that the resolution it declines to include in its proxy materials comes within one of the recognized exceptions. *Medical Comm. for Human Rights v. SEC*, 432 F.2d 659, 680 (D.C.Cir.1970), *vacated as moot*, 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972).

## III.

The parties disagree as to what constitutes the "ordinary business operations" of the company, and in particular whether the terms of the company's pension plan falls within that phrase. In 1976, when the SEC adopted the subject Rule in its current form, it noted that "ordinary business operations" until then had included "matters which have significant policy, economic or other implications inherent in them." It gave as an example of such a matter a utility company's construction of a nuclear power plant. The SEC said that in retrospect, the economic and safety considerations attendant upon such construction took such a matter out of the realm of the "ordinary," and that in future "proposals of that nature, as well as others that have major implications, will ... be considered beyond the realm of an issuer's ordinary business operations, and future interpretative letters of the Commission's staff will reflect that view." However, the agency noted that although the new paragraph would be more restrictively interpreted than its predecessor, "where proposals involve business matters that are mundane in nature and do not involve any substantial policy or other considerations, the subparagraph may be relied upon to omit them." Adoption of Amendments Relating to Proposals by Security Holders, 41 Fed.Reg. 52,994, 52,998 (1976).

Plaintiffs employ a variety of approaches to propel their resolution beyond the mundane. Thus, they cite the SEC's refusal to grant no-action letters in cases dealing with resolutions to employ an ombudsman who would review the fairness of public affairs programming, *RCA Corp.*, [1975–76 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 80,240 (Feb. 18, 1975), to increase corporate charitable contributions by 400%, *West Point Pepperel, Inc.*, [1980 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 76,377 (Oct. 2, 1979), and to limit the availability of "golden parachute" compensation packages. *Transamerica Corp.*, [1990 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 79,338 (Jan. 10, 1990). They refer also to the agency's increasing willingness to require companies to submit to shareholder vote issues of executive compensation that go beyond "golden parachutes" to include the amount of executive salaries. (Geller Aff.Exh. A)

Finally, plaintiffs characterize their own proposal in terms that pass occasionally through the fervid and into the fustian. Thus, we are told that theirs is "a proposal for pension justice," while the current system is "discriminatory" because "employees who start working for the Company in their twenties and thirties are at a disadvantage when applying for a pension, rewarded for their long, continuous service with the Company by having to stay in its employ for a longer period of time before receiving their full pension." Although pension terms of the sort plaintiffs favor are available to members of the uniformed services in New York City, defendant is said to regard such proposed terms for its own employees as "extraordinary to the point of being audacious."

Lost in this miasma of analogy and hyperbole is the SEC's long record of no-action letters on the precise subject at issue here: companies seeking to exclude pension proposals from their proxy materials. More than 50 such letters covering approximately a ten-year period are cited in an appendix to defendant's memorandum in opposition to plaintiffs' preliminary injunction motion. The proposal in this case elicited such a letter, as did several other analogous proposals at or about the same time. (Defendant's Appendix, Tabs 4–9) Moreover, even the SEC's announcement of its new policy expanding the scope of compensation issues that must be submitted to shareholder vote made plain that such issues relate only to senior executive compensation and not to compensation of employees generally. (Defendant's Appendix, Tab 16, p. 8) The SEC's application of its own regulations, particularly when those regulations have the force of law, certainly deserves some deference. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980); *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945); 2 K. Davis, *Administrative Law Treatise* § 7.22 at 107 (2d Ed.1979).

It is also relevant that plaintiffs have available to them the forum of collective bargaining, where they have announced their intention to raise the issue they now press. That is not to say that a subject that can be raised in collective bargaining always must be treated as "ordinary business operations." However, the availability of collective bargaining to resolve the issue does make it apparent that the issue is not so extraordinary that a shareholder vote is the only forum or the most effective forum in which it can be raised. In addition, the pension proposal in question relates to virtually the entire work force, not simply to senior management or any other particular group. It is thus not extraordinary in that sense either.

Further, however plaintiffs may perceive their own cause of enhanced pension rights, it has not yet captured public attention and concern as has the issue of senior executive compensation. Nor can plaintiffs reasonably liken their proposed resolution to the one pressed by plaintiffs in *Medical Comm. for Human Rights, supra,* who sought during the Viet Nam war to require a vote by Dow Chemical Company shareholders on whether that company would continue to manufacture napalm. The comparison is an uncomfortable one at best. Rather, plaintiffs' resolution shows

that even an "audacious" proposal on a mundane topic is still mundane.

Plaintiffs argue also that to uphold Con Edison's right to exclude their proposal from its proxy materials risks denying them the equal protection of the laws. The short answer is that the only government agency to have acted here, the SEC, has not limited plaintiffs' rights at all, but has said only that it will not sue Con Edison for failure to include the disputed resolution in its proxy materials. Con Edison is not a government agency and is not itself subject to the constitutional restrictions plaintiffs would impose absent some suggestion, not present here, of joint action with government officials. *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948).

Because Con Edison has shown that the proffered resolution comes within the exception for "ordinary business operations," there is no need to deal also with whether it is designed simply to confer a benefit on and further a personal interest of its proponents. 17 CFR § 240.14a–8(c)(4).

If the resolution in question is not included in the proxy materials, it cannot be voted on by Con Edison's shareholders. Therefore, it appears that irreparable injury is present. However, even considering that the burden is on Con Edison to show that the proposal comes within the cited exception, plaintiffs have failed to show that they will likely succeed on the merits or that the equities weigh in their favor, decidedly or otherwise. Accordingly, their motion for a preliminary injunction must be denied.

### IV.

■ The only other relief plaintiffs seek is a generally phrased injunction compelling Con Edison, in essence, to include in its proxy materials proposed resolutions to the extent the law requires such inclusion. Because Con Edison has established that the disputed pension proposal fits comfortably within the exception for "ordinary business operations," the general injunction plaintiffs seek would be unconnected to any current or anticipated violation of law. An injunction should not issue under such circumstances.

It goes without saying that an injunction is an equitable remedy. It 'is not a remedy which issues as of course,' *Harrisonville v. W.S. Dickey Clay Mfg. Co.*, 289 U.S. 334, 337–38, 53 S.Ct. 602, 603, 77 L.Ed. 1208 (1933), or 'to restrain an act the injurious consequences of which are merely trifling.' *Consolidated Canal Co. v. Mesa Canal Co.*, 177 U.S. 296, 302, 20 S.Ct. 628, 630, 44 L.Ed. 777 (1900). An injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.' *Cavanaugh v. Looney*, 248 U.S. 453, 456, 39 S.Ct. 142, 143, 63 L.Ed. 354 (1919).

*Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311–12, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982).

Because it appears that no further relief can or should be granted in this case, defendant's motion for summary judgment is granted, and the complaint is dismissed.

SO ORDERED.