**UNITED STATES of America,
Appellant,**

v.

Howell F. BURCH, Appellee.

No. 18679.

United States Court of Appeals
Fifth Circuit.

Aug. 24, 1961.

William C. Calhoun, U. S. Atty., William T. Morton, Asst. U. S. Atty., Augusta, Ga., for appellant.

Carl K. Nelson, Dublin, Ga., for appellee.

Before JONES and BROWN, Circuit Judges, and CONNALLY, District Judge.

JOHN R. BROWN, Circuit Judge.

This case involving the seizure and condemnation of property allegedly used in the manufacture of illicit whiskey raises one primary question for our consideration. That is whether an earlier acquittal of Burch in a criminal prosecution involving possession of the same property made the subject of this libel of forfeiture operates as a bar to the present action on principles of res judicata, or more properly collateral estoppel. Consideration of this question, though, branches into two distinct inquiries. First, whether the fact that the criminal prosecution was terminated on a motion for judgment of acquittal based on lack of evidence to connect appellee with the conspiracy makes collateral estoppel ineffective as a bar as to this action. Second, whether the forfeiture statute is remedial or punitive in nature and the effect that inquiry has on the availability of collateral estoppel as a defense.

This forfeiture proceeding originated as a libel *in rem* against 307 bags of sugar under 26 U.S.C.A. § 7302 in the Southern District of Georgia. The libel alleged that Burch had possessed this large quantity of sugar with the purpose and intent that it be used in the manufacture of illicit whiskey in violation of 26 U.S.C.A. § 5686(b). Burch filed a claim to the sugar. While the forfeiture proceeding was pending in Georgia, Burch was indicted, along with 15 others, in the Southern District of Florida for unlawfully conspiring to violate the internal revenue laws by manufacturing, possessing, selling, etc., illicit whiskey.[1] Sixty-nine overt acts were alleged at least three of which related to the acquisition, transportation and storage of the identical sugar which is the subject matter of the present forfeiture action.

On the trial of the criminal action in Florida the District Judge granted a motion for judgment of acquittal made by Burch. The motion under F.R.Crim. P. 29(a), 18 U.S.C.A. was based on the total lack of proof connecting Burch with the conspiracy. Thereafter, Burch amended his answer in the forfeiture proceeding in Georgia raising the defense of res judicata and setting forth the indictment and judgment of acquittal in the criminal case. Pursuant to this plea he filed a motion for summary judgment. The District Court granted the motion from which the Government brings this appeal.

In the trial court, and here, Burch rests on Coffey v. United States, 1886, 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 684. On that approach there are two subsidiary inquiries. They may appear to be separate, but

---

1. The indictment specified 26 U.S.C.A. §§ 5174, 5606, 5008, 7206, 5686(b), 5632, 5216, 5105, 5691.

as both are concerned in a way with the Coffey case and especially the manner in which it is treated and distinguished by later cases, they are closely related. The first inquiry concerns the nature of the forfeiture proceeding as criminal or civil, punitive or remedial. The second relates directly to the vitality of Coffey as a controlling precedent.

██ A libel of forfeiture under 26 U.S.C.A. § 7302 is, nominally, at least, a civil action. This is not, of course, determinative of its true nature—that is, whether the action is really civil as opposed to criminal, or as it is sometimes expressed remedial rather than punitive. The distinction may be of decisive importance. If the forfeiture action is criminal (punitive) then a determination in the one might bar re-examination of the same issue in the other. On the other hand, if it is a civil, that is remedial, suit there is considerable doubt that res judicata would act as a bar to the maintenance of it. This is so because an acquittal in a criminal action is considered "merely * * * an adjudication that the proof was not sufficient to overcome all reasonable doubt of the guilt of the accused." Helvering v. Mitchell, 1938, 303 U.S. 391, at page 397, 58 S.Ct. 630, 632, 82 L.Ed. 917. As to the issues raised, it does not constitute an adjudication on the preponderance-of-the-evidence test which applies in civil proceedings.[2] United States v. National Ass'n of Real Estate Boards, 1950, 339 U.S. 485, 492–494, 70 S.Ct. 711, 94 L.Ed. 1007; United States v. One 1953 Oldsmobile 98 4 Door Sedan, 4 Cir., 1955, 222 F.2d 668, at page 673; see 30A Am. Jur., Judgments § 472 et seq. at 512.

This approach would require that we categorize this particular action, at least for the purposes of this inquiry, as civil (remedial) or criminal (punitive) in nature. Under the existing case law, this is a none too easy task.

██ Save for a few carefully delineated areas, it is not at all clear what, if any, suits for forfeiture of property, or for payment of multiple damages to the Government should more properly be regarded as punitive rather than civil. However, the weight of authority seems to support the proposition that forfeiture *in rem* actions, such as the present one, are essentially civil in nature, and should not be burdened with the attributes of a criminal action. Various Items of Personal Property v. United States, 1931, 282 U.S. 577, 580, 51 S.Ct. 282, 75 L.Ed. 558; Helvering v. Mitchell, supra, 303 U.S. 391, at page 400, 58 S.Ct. 630; United States v. 42 Jars, etc., D.C.D.N.J.1958, 160 F. Supp. 818, at page 821; United States v. 20 Strings Seed Pearls, D.C.S.D.N.Y.1929, 34 F.2d 142; but see United States v. 38 Cases, etc., D.C.S.D.N.Y.1951, 99 F. Supp. 460, at page 464. But the standards by which this question is to be determined are not entirely clear. One factor emphasized as important is the existence of express criminal penalties for the same wrongful act within the same statutory scheme imposing the sanction of forfeiture. United States ex rel. Mar-

---

2. The doubt begins at this precise point. And its source is Coffey v. United States, 1886, 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 684, which held a criminal acquittal on a jury verdict conclusive in a later forfeiture *in rem* action. The Court stated "It is urged as a reason for not allowing such effect to the judgment, that the acquittal in the criminal case may have taken place because of the rule requiring guilt to be proved beyond a reasonable doubt; and that, on the same evidence, on the question of preponderance of proof, there might be a verdict for the United States, in the suit *in rem*. Nevertheless, the fact or act has been put in issue and determined against the United

States; * * *. There could be no new trial of the criminal prosecution after the acquittal in it; and a subsequent trial of the civil suit amounts to substantially the same thing, with a difference only in the consequences following a judgment adverse to the claimant." 116 U.S. at page 443, 6 S.Ct. at page 440.

While this case has never been expressly overruled, this statement is difficult to reconcile with the decision in Helvering v. Mitchell, supra, that "The difference in degree of the burden of proof in criminal and civil cases precludes application of the doctrine of res judicata." 303 U.S. 391, at page 397, 58 S.Ct. 630, at page 632.

cus v. Hess, 1943, 317 U.S. 537, at page 549, 63 S.Ct. 379, 87 L.Ed. 443; United States v. 38 Cases, etc., D.C.S.D.N.Y. 1951, 99 F.Supp. 460, at page 463. This, some courts reason, demonstrates legislative intent that the additional forfeiture or payment provisions are meant only to compensate the Government for its loss or to protect some aspect of the public interest from future harm. Of significance too may be the relationship between the harm suffered by the Government and the loss to the claimant from the forfeiture. United States ex rel. Marcus v. Hess, supra, 317 U.S. 537, at page 554, 63 S.Ct. 379 (concurring); Helvering v. Mitchell, supra, 303 U.S. 391, at page 401, 58 S.Ct. 630. The intrinsic nature of the enforcement procedures prescribed in the statute are also relevant factors in this regard. Helvering v. Mitchell, supra, 303 U.S. 391, at page 402, 58 S.Ct. 630.

That brings us to the second inquiry concerning the binding character today of the Coffey decision.

Burch correctly emphasizes that the facts of Coffey are indeed quite similar to his. A suit was instituted for the forfeiture of certain materials allegedly used to violate the liquor laws. Subsequently a criminal action based on the same facts was prosecuted by a trial before a jury. The jury returned a general verdict of not guilty and judgment of acquittal was entered. The forfeiture proceedings were later reopened resulting in a judgment for the Government. On appeal, the Supreme Court ordered the libel dismissed holding that the criminal action barred a suit for forfeiture based on the same facts.

The Coffey decision has been the subject of a great deal of controversy, and no little criticism. See, e. g., United States ex rel. Marcus v. Hess, supra, 317 U.S. 537, at page 554, 63 S.Ct. 379. As the Third Circuit characterized it, the case has received a distinctly "unfavor-able press." United States v. One Dodge Sedan, 3 Cir., 1940, 113 F.2d 552, at page 553 and notes 1 and 2. In a figure indigenous to the usual assertion of it the Fourth Circuit remarked, "A lot of water has gone over the dam, and a great deal of whiskey has come from the stills since the Coffey decision nearly seventy years ago." United States v. One 1953 Oldsmobile 98 4 Door Sedan, 4 Cir., 1955, 222 F.2d 668, at page 670. Both cases expressed considerable doubt as to the continued vitality of Coffey but happily found distinguishing factors to avoid either its doctrine or a determination of its current force. Other courts have shown a similar reluctance to apply literally the holding of Coffey. United States v. One DeSoto Sedan, D.C.E.D.N.C.1949, 85 F.Supp. 245; United States v. Gramer, 9 Cir., 191 F.2d 741, 27 A.L.R.2d 1132; United States v. One 1951 Cadillac Coupe DeVille, D.C.W.D.Pa.1952, 108 F. Supp. 286; United States v. Physic, 2 Cir., 1949, 175 F.2d 338; United States v. 20 Strings Seed Pearls, D.C.S.D.N.Y. 1929, 34 F.2d 142.

On the other hand, Coffey has at various times been applied by other courts. The Tenth Circuit is apparently committed to the proposition that it still exists as the controlling authority in these cases. United States v. One 1956 Ford Fairlane Tudor Sedan, 10 Cir., 1959, 272 F.2d 704. On other occasions courts without an examination of the merits of the doctrine and the case law that it has generated have applied it on principles of stare decisis. This is illustrated by the opinion of the Fourth Circuit just five years before its recent expression quoted above. United States v. One DeSoto Sedan, 4 Cir., 1950, 180 F.2d 583.

Burch echoes what these Courts point out. Attacked and critized as it is, the fact remains that Coffey has never been expressly overruled by the Court which handed it down.[3] It must be recognized

3. There have been occasions, of course, in which courts have thought it permissible to decline to apply a decision as a currently binding precedent even though it has not been formally overruled. Rarely ever done, these courts base this on such circumstances as the many changes which have occurred in the law since the deci-

though that on several occasions it has been distinguished on rather fine grounds by that Court. Helvering v. Mitchell, supra, 303 U.S. 391, at page 405–406, 58 S.Ct. 630; Murphy v. United States, 1926, 272 U.S. 630, at page 631, 47 S.Ct. 218, 71 L.Ed. 446; Stone v. United States, 1897, 167 U.S. 178, at pages 186–188, 17 S.Ct. 778, 42 L.Ed. 127; United States v. National Association of Real Estate Boards, 1950, 339 U.S. 485, at page 493 note 6, 70 S.Ct. 711, 94 L.Ed. 1007. And as we pointed out in note 2, supra, some of the language in Coffey seems absolutely irreconcilable with later decisions. This probably accounts for Mr. Justice Frankfurter's reference to the "uncritical language in earlier cases," citing Coffey, in United States ex rel. Marcus v. Hess, supra, 317 U.S. 537, at page 554, 63 S.Ct. 379, 389.

Despite the preoccupation of counsel with these interesting questions and the sometimes troublesome difficulties inherent in them which our brief review reflects, we find it unnecessary to resolve them specifically. As to the first inquiry on the nature of the forfeiture proceedings as criminal rather than civil we may assume in considering res judicata or collateral estoppel principles that this action is of a nature which would, if meeting other requirements, be properly barred by the previous criminal acquittal. As to the second inquiry concerning Coffey we may assume its continued vitality as a precedent. Nevertheless, for the reasons we now discuss, the acquittal in the criminal case does not bar the present forfeiture action. It may properly be maintained.

■■ Res judicata, broadly defined to encompass collateral estoppel as well, is a judicial rule which operates to prevent redetermination of an issue already litigated between the same parties in a previous action.[4] An issue is considered as having been put to rest as to the parties involved by the first valid judicial ruling on it. It may not thereafter be redetermined. But by its very definition for the first judgment to collaterally estop the raising of an issue in a later suit, it must actually have been determined in the earlier litigation. This requirement flows naturally from the purposes which the doctrine sought to achieve. It is intended to prevent re-litigation of an issue already judicially determined. Before there can be a relitigation there must first be the original litigation concluded by a final adjudication. When an issue is not determined in the earlier proceeding, though it may have been raised and argued by the parties, it is a permissible subject of controversy in the later proceeding. The Supreme Court has made these requirements clear. " * * * [T]he inquiry must always be as to the point or question actually litigated and determined in the original action; not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action." United States v. International Building Company, 1953, 345 U.S. 502, at page 505, 73 S.Ct. 807, 809, 97 L.Ed. 1182; Seaboard

sion was rendered and the inroads made on its principles over the intervening years. See, Browder v. Gayle, D.C.M.D. Ala. (3-judge district court) 1956, 142 F.Supp. 707, at page 716 and note 14, affirmed 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed. 2d 114; Columbia General Investment Corp. v. S. E. C., 5 Cir., 1959, 265 F. 2d 559, at page 562 and note 7.

4. The differences between res judicata and collateral estoppel should be kept in mind. While the former in its broad sense encompasses the latter, there are clear distinctions between the two. Collateral estoppel operates to prevent relitigation of issues actually litigated between the same parties in a suit on a *different* cause of action. Res judicata, strictly speaking, applies when a second suit on the *same* cause of action arises between the same parties. It precludes the litigation in the second suit not only of all issues that were raised in the first but of all issues that *could have been raised* by the parties in that proceeding. For a good analysis of this distinction see Kelliher v. Stone & Webster, 5 Cir., 1935, 75 F.2d 331.

Air Line Ry. Co. v. George F. McCourt Trucking, Inc., 5 Cir., 1960, 277 F.2d 593, at pages 596–597; Kelliher v. Stone & Webster, 5 Cir., 1935, 75 F.2d 331; 30A Am.Jur., Judgments §§ 371, 373, 374.

Under these rules the precise question with which we are here confronted becomes quite clear. We must ascertain whether the disposition of this action "would require relitigation of specific fact issues which have already been judicially determined." Adams v. United States, 5 Cir., 1961, 287 F.2d 701, at page 703. The precise nature of this inquiry is exemplified by cases involving submission of the issues to a jury under a general charge in response to which it returns a general verdict. Sealfon v. United States, 1948, 332 U.S. 575, 68 S. Ct. 237, 92 L.Ed. 180; Yawn v. United States, 5 Cir., 1957, 244 F.2d 235. Ascertaining just what issues have been resolved by the jury in its general verdict frequently presents some difficulties. But difficult or not the answer must be found for it is only those issues which were "necessarily determined" which are barred from re-examination in a subsequent action. United States v. Sealfon, supra, 332 U.S. 575, at page 580, 68 S.Ct. 237; Seaboard Air Line Ry. Co. v. George F. McCourt Trucking, Inc., supra, 277 F.2d 593, at page 597. In this case we encounter none of those difficulties.

The criminal indictment brought against Burch alleged the identical acts made the basis of the present complaint against the goods. But it did so only as overt acts in the furtherance of a conspiracy, not as substantive crimes in themselves. The sole crime charged was the conspiracy. Burch's connection with the conspiracy, therefore, was a vital element of the Government's case, and it was on this element that its case failed. The question of the truthfulness of the alleged overt acts or the sufficiency of the evidence to establish them was never reached. The Judge simply held that as there was no evidence to connect Burch with the conspiracy the sole crime with which they were charged was not proved and the motion to acquit must be granted.

The Court hardly could have made it clearer that he was not ruling on whether Burch did, or did not, do the alleged overt acts, but on the lack of evidence showing any connection with a conspiracy. During the hearing on the motion the Judge stated this to counsel for the Government. "Well, suppose you assume that they bought this sugar for an illegal purpose, that is, to be used in connection with the illicit manufacture of liquor. Suppose you assume that the proof shows that. I am assuming more than the proof shows. * * * How does that connect them with the conspiracy?" A few moments later the Court made this comment. " * * * They went down there and bought a pretty large quantity of sugar under very suspicious circumstances, as far as the proof shows. I don't think any jury would think they were buying it to make candy, but, even if you assume all of that, you still have got to connect them with this conspiracy." The next morning counsel for the Government stated that it had "gone over the evidence, or possibly the lack of it, to connect Mr. Burch and Mr. Vaughn with this conspiracy; and the Government at this time will interpose no objection to a directed verdict of acquittal * * *." In reply the Judge stated, "The Court has come to the same conclusion. That was going to be the ruling of the Court this morning." And so it was, as the formal judgment reflected.

Thus the case is clearly one where the issue sought to be raised has not been previously adjudicated. Even were this not so clear, however, a different result would not be compelled. This is so because Burch has failed to demonstrate affirmatively that the issue was previously decided. In other words, if doubt exists he loses. In United States v. International Building Co., supra, the Supreme Court could not ascertain whether the question of alleged tax deficiencies caused by incorrect depreciation methods

had been adjudicated in a suit involving the same taxpayer during earlier years. "There is no showing either in the record or by extrinsic evidence \* \* \* that the issues raised by the pleadings were submitted to the Tax Court for determination or determined by that court. They may or may not have been agreed upon by the parties." 345 U.S. 502, at page 505, 73 S.Ct. 807, at page 809. Nevertheless the Court held that determination of the issue in the later action was entirely proper. "[T]he inquiry must always be as to the point or question actually litigated and determined in the original action; not what might have been thus litigated and determined." 345 U.S. 502, at page 505, 73 S.Ct. 807, at page 809. Dixie Sand & Gravel Corp. v. Holland, 6 Cir., 1958, 255 F.2d 304, at page 310; Kelliher v. Stone & Webster, 5 Cir., 1935, 75 F.2d 331.

For us to prevent inquiry into the fact of possession and use of the sugar would be to ignore the positive basis on which the judgment of acquittal was granted. More important, it would allow an abuse of the doctrine of collateral estoppel, hindering rather than aiding the effective administration of justice. A similar concern has caused the Supreme Court to say, "\* \* \* unless we can say that [there was] an adjudication of the merits, the doctrine of estoppel by judgment would serve an unjust cause: it would become a device by which a decision not shown to be on the merits would forever foreclose inquiry into the merits." United States v. International Building Company, supra, 345 U.S. 502, at page 506, 73 S.Ct. 807, at page 809.

Finally, the fact that the criminal indictment charged only a conspiracy affords further reasons in support of the result we reach. As this Court pointed out in the circumstances of Herman v. United States, 5 Cir., 1961, 289 F.2d 362, at page 368, a general jury verdict favorable to the defendant in a conspiracy prosecution "\* \* \* does not mean that the overt act did not occur; it means merely that the jury did not find [the defendants] guilty of the commission of an offense. Such a finding does not make the act itself disappear."

The critical facts in the libel of forfeiture have not previously been determined. They are ripe for a trial.

Reversed and remanded.