**UNITED STATES of America,
Appellant,**

v.

**J. J. WOOTEN, Appellee.**

**No. 21570.**

United States Court of Appeals
Fifth Circuit.

March 22, 1965.

Kathryn H. Baldwin, Alan S. Rosenthal, Attys., Dept. of Justice, Washington, D. C., Gus L. Woods, Asst. U. S. Atty., Atlanta, Ga., John W. Douglas, Asst. Atty. Gen., Charles S. Goodson, U. S. Atty., for appellant.

Alan E. Serby, Paul M. Daniell, Atlanta, Ga., for appellee, Watkins & Daniell, Atlanta, Ga., of counsel.

Before TUTTLE, Chief Judge, MOORE,* Circuit Judge, and SLOAN, District Judge.

MOORE, Circuit Judge:

Appellant, United States of America (the Government), appeals from a final judgment entered against it (January 7, 1964), dismissing upon defendant's (appellee's) motion its complaint. Defendant's motion to dismiss was based "on the grounds that the cause of action is *res judicata*." The prior adjudication is claimed to be "the action taken by this Court [the trial court here] in United States of America, Plaintiff, v. J. J. Wooten, d/b/a Atlanta-Alabama Motor Lines, Inc., Defendant, Civil Action No. 8142, United States District Court, Northern District of Georgia, Atlanta, Division." To determine whether there has been an actual adjudication in the former action, a review of the pleadings, proceedings and judgment therein must be made. In short, what, if anything, was adjudicated?

The complaint in No. 8142 sought to recover freight overcharges as set forth in a Certificate of Indebtedness of the General Accounting Office (GAO), dated June 7, 1960, and addressed to Atlanta-Alabama Motor Lines, Inc. However, the defendant in the complaint filed November 13, 1962, was named as "J. J. Wooten D/B/A Atlanta-Alabama Motor Lines, Inc." (the "corporation") and Wooten was alleged to be the debtor.

In Wooten's answer for one of its defenses, he denied that he had ever done business as the corporation but admitted that at one time he had been a stockholder therein. He then alleged that in 1955 all of the corporation's stock had been transferred to B&M Express, Inc. and that in 1959 the stock of B&M had been transferred to Transcon Line, Wooten then sought judgment on the pleadings. His memorandum in support

* Of the Second Circuit, sitting by designation.

thereof relied solely upon the legal principle that "stockholders, except in special circumstances, are not liable for the debts of the corporation" and cited Williams v. Appliances, Inc., 91 Ga.App. 608, 86 S.E.2d 632 (1955) in support thereof.

The court, citing the Williams case and other relevant Georgia decisions upheld this principle and granted judgment in Wooten's favor. By motion, filed April 2, 1963, the Government upon the grounds that it had "uncovered newly discovered evidence" and "excusable neglect" in that it had made a "mistake in assuming that defendant operated the Atlanta-Alabama Motor Lines, Inc., as a proprietorship" sought to amend its complaint. In the proposed amendment, it alleged both new facts and new theory, namely, that Wooten when selling his stock had agreed "to personally pay all claims against Atlanta-Albama Motor Lines Inc., which arose before the consummation of the sale on March 25, 1955." A new Certificate of Indebtedness was annexed to the proposed amendment which, in addition to the overcharge, stated:

"Subsequently you accepted the assets and obligations, including overcharges, of Atlanta-Alabama Motor Lines, Inc."

The court denied the motion giving as reasons "no excusable neglect," that the amendment "would [not] warrant any different result," that there was no showing that with due diligence the "newly discovered evidence" could not have been found earlier and that it was not "material to the issues" in any event.

Thereafter in new action No. 8634 (complaint filed October 30, 1963)

against "J. J. Wooten" the government sought to recover the freight overcharges as stated in a Certificate dated March 26, 1963, and upon the facts and theory that Wooten in his sale contract had "agreed to pay all overcharges incurred by Atlanta-Alabama Motor Lines, Inc." An answer pleading res judicata and a motion to dismiss on this ground followed. The court, referring to its decision in No. 8142 denying the motion to amend, granted the motion to dismiss. The government appeals.

■■  Three facts fundamental to the proper decision here are clear.[1]  (1) There has been no determination on the merits as to whether there were any freight overcharges. (2) There has been no determination that Wooten was not liable under his stock sale contract as a third-party beneficiary because that question was never before the court. (3) The original judgment of dismissal was based upon the ground that Wooten was not individually liable as a stockholder for the corporation's debts. The foundation, therefore, essential to a valid defense of res judicata is lacking.

Wooten argues (a) that the government has been "dilatory and negligent"; (b) that it has had "its day in Court"; (c) that the "third party beneficiary theory is not available" to the government; (d) that the action is barred because of res judicata; and (e) that "justice and public tranquillity require an affirmance."

■  These arguments may be answered collectively. The second action went far beyond a mere change of theory based upon the facts pleaded in the first

---

1. It hardly need be said that for res judicata to be applicable in a case like this there must be an identity of the thing being sued for, i. e., the cause of action and, as to it, an adjudication on the merits. See, e. g., Lawlor v. National Screen Serv., 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); James L. Saphier Agency, Inc. v. Green, 2 Cir., 293 F.2d 769, 772–773 (2d Cir. 1961); Providential Dev. Co. v. United States Steel Co., 236 F.2d 277, 280–281 (10th Cir. 1956); Hyman v. Regenstein, 222 F. 2d 545, 549 (5th Cir. 1955); June v. George C. Peterson Co., 155 F.2d 963, 965–966 (7th Cir., 1946). Res judicata is inapplicable if new matters are alleged. See Estevez v. Nabers, 219 F. 2d 321, 323 (5th Cir. 1955). Thus, the applicability of the doctrine in each case turns on the particular facts alleged in each action and the particular disposition of the allegations in the first action.

action. True, the stock sale contract was filed with the Interstate Commerce Commission before the first action was commenced but it would be highly unrealistic to hold that the government should be charged with knowledge of every document in the files of every one of its administrative agencies. With the mounting number of matters entrusted to the jurisdiction of such agencies and the increasing number of forms and documents required, even a computer would have difficulty in supplying this information within its own agency—much less to a fellow computer in another agency. As to the "day in Court" argument, the direct answer is that the government has not had its day on the only real questions: were there overcharges?; and is Wooten obligated therefor? [2]

Wooten's contentions regarding third party liability are not persuasive. They are conclusory assertions without convincing reasons. Lastly, in this day and age of troublesome national and international problems, it is doubtful that "public tranquillity" will be too much disturbed by granting to the government a trial on the merits. Wooten's other prong, "justice", would seem better served by such a trial.

Wooten has presented many interesting arguments as to the federal concept of "claim," the identity of the claims, adjudication on the merits, and what could and should have been done, but it is better to leave these theories assembled on the point of a pin and go directly to the merits. After all, Wooten, as a seller, did agree amongst other things to pay all "overcharges" and did with his brother (if the contract was performed) receive $255,000 for their stock.

The judgment entered January 7, 1964, is reversed.

2. Nor is there any estoppel as to the facts underlying this different cause of action. The second action relies on no claim actually decided in the first action. Therefore, there is no room for collateral estoppel, there being two causes of action, nor direct estoppel, had there been

only one cause of action. See, e. g., United States v. Burch, 294 F.2d 1, 5–6 & n. 4 (5th Cir. 1961); Insull v. New York, World-Telegram Corp., 273 F.2d 166, 167–168 (7th Cir. 1959), cert. denied, 362 U.S. 942, 80 S.Ct. 807, 4 L.Ed. 2d 770 (1960).