**UNITED STATES of America,**
**Plaintiff,**

v.

**86.9 CASES, MORE OR LESS OF AS-**
**SORTED DISTILLED SPIRITS,**
**WINE AND BEER.**

Civ. No. 71-443.

United States District Court,
S. D. Florida,
Miami Division.

Nov. 19, 1971.

Robert W. Rust, U. S. Atty., Miami, Fla., for plaintiff.

Norman Francis Haft, Miami, Fla., for defendant.

ORDER OF DISMISSAL

EATON, District Judge.

This cause came before the Court on agreed facts for a determination of whether this action is barred by a Judgment of Acquittal entered in a "companion" criminal case in favor of the claimant here, James Tarantino.

On June 14, 1969 a retail liquor store called "Funky Broadway" was inspected by investigators from the Alcohol, Tobacco and Firearms Division of the United States Treasury Department. At that time Mr. James Tarantino, who claimed to be the manager of the store, was notified that as a retail dealer in liquor he was required to pay a special yearly tax, the payment of which is denoted by a stamp issued to the liquor dealer. He was told that he should immediately pay the tax and obtain the stamp which would expire on June 30, 1969, and that he must again pay the tax on July 1, 1969 for the fiscal year 1969–1970. On June 28, 1969 the special tax for the fiscal year 1968–1969 was paid by the bookkeeper for "Funky Broadway".

On October 23, 1969 Funky Broadway was inspected again by the Treasury investigators. No tax stamp was found for the fiscal year 1969–1970. At that time the entire stock of whiskey, beer and wine (86.9 cases) was seized by the government. At the time of the seizure, James Tarantino was the sole owner and possessor of the 86.9 cases of whiskey, beer and wine.

The special tax of $65.88 for the fiscal year 1969–1970 was paid by James Tarantino on October 24, 1969.

Thereafter the United States instigated two actions. In the first, 70–534–CR–JLK, an indictment charged that Tarantino and others had willfully failed to pay the special tax required by 26 U.S.C. § 5121 in violation of 26 U.S.C. § 5691. That action resulted in the Judgment of Acquittal entered in favor of Tarantino on March 16, 1971. In grant-

ing the Judgment of Acquittal, Judge Kraft specifically ruled that he had "reasonable doubt that his (Tarantino's) admitted failure to pay the special tax was willful" [1]. Therefore, Judge Kraft found Tarantino not guilty.

The second action was filed three days after Judge Kraft signed the Judgment of Acquittal and is the case at bar. In this action the government seeks the forfeiture of the 86.9 cases of spirits, wine and beer because of the alleged violation of 26 U.S.C. § 7302 which in part provides:

> "It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws . . . and no property rights shall exist in any such property. A search warrant may issue as provided in chapter 205 of title 18 of the United States Code and the Federal Rules of Criminal Procedure for the seizure of such property.

Claimant James Tarantino contends that this action is barred by Judge Kraft's Judgment of Acquittal.

The resolution of this issue is controlled by Coffey v. United States, 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 684 (1886) which is factually very similar to the case at bar. In the *Coffey* case the Supreme Court held acquittal on a jury verdict to be conclusive in a later forfeiture in rem action saying:

> "It is urged as a reason for not allowing such effect to the judgment that the acquittal in the criminal case may have taken place because of the rule requiring guilt to be proved beyond a reasonable doubt, and that, on the same evidence, on the question of preponderance of proof, there might be a verdict for the United States in the suit in rem. Nevertheless, the fact or act has been put in issue and determined against the United States; . . There could be no new trial of the criminal prosecution after the acquit-

tal in it; and a subsequent trial of the civil suit amounts to substantially the same thing, with a difference only in the consequences following a judgment adverse to the claimant.". 116 U.S. at page 443, 6 S.Ct. at page 440.

Later Supreme Court cases have approached similar problems by applying the distinction taken in Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938) between "sanctions that are remedial and those that are punitive." United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L. Ed. 443 (1943), United States v. National Association of Real Estate Boards, 339 U.S. 485, 70 S.Ct. 711, 94 L.Ed. 1007 (1950). According to the *Helvering* approach, if the sanction involved in the forfeiture action is "remedial" rather than "punitive," the forfeiture action is a civil action and the "difference in degree of the burden of proof in criminal and civil cases precludes application of the doctrine of res judicata." Helvering v. Mitchell, 303 U.S. at page 397, 58 S. Ct. at page 632, 82 L.Ed. at page 920. In applying the *Helvering* distinction, however, the Supreme Court has characterized the *Coffey* case as a "civil suit which was punitive in character." United States v. National Association of Real Estate Boards, 339 U.S. at page 493, 70 S.Ct. at page 716, 94 L.Ed. at page 1015. Thus the *Coffey* case has never been overruled and has continued vitality as a precedent. United States v. Burch, 294 F.2d 1 (5th Cir., 1961).

Not only that, even without putting aside the dialectical subtleties between "remedial" and "punitive" sanctions, *Coffey* is right. The purpose of statutes such as the one with which we are dealing is to make the government whole—to allow the government to secure full compensation for interference with the rights of the United States. Congress has allowed comprehensive penalties to be imposed and enforced in separate actions rather than in a single

1. Compare this finding with the situation in United States v. Burch, 294 F.2d 1 (5th Cir., 1961).

proceeding. Of course one may be convicted of a crime and still forfeit his property. But here we are dealing with an acquittal on a charge, the essential elements of proof involved being identical, to the elements of proof necessary to effect a forfeiture.

The government filed this proceeding three days after the acquittal—to make the government whole for interference with the rights of the United States, interference which it could not prove. This case, as was *Coffey*, is a "civil suit punitive in character."

There is another reason why the often criticized *Coffey* remains viable. It makes sense. Absent *Coffey*, picture the result which might be conveyed to John Q. Citizen by his lawyer or by the judge. Mr. Citizen would be told that he had been found not guilty of the criminal charge. However, it being *likely* that he did the thing with which he was charged, the several thousand dollars worth of whiskey had to remain with the government. He should not concern himself with that factor because the civil proceeding was an action in rem—against the whiskey. The whiskey lost. The action was "remedial" in character. It was not punitive. Mr. Citizen cannot be fined. However, he must give up his several thousand dollars worth of whiskey—to make the government whole.

As told us in *Burch, supra*, the case of *Coffey* has not been overturned. This Court is bound by the precedent of *Coffey*. Any determination that *Coffey* is no longer the law must come from the Fifth Circuit Court of Appeals or the United States Supreme Court, not from this trial court.

■ Because of the continued vitality of *Coffey*, and because the case at bar is factually closer to *Coffey* than to *Helvering*, the Judgment of Acquittal in case number 70–534–CR–JLK operates as a bar to this action.

Therefore, it is

Ordered and adjudged that this action is dismissed with prejudice.